CHRISTOPHER E. PRINCE (SBN 183553)
  cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
  matt@lesnickprince.com
DEBRA E. CARDARELLI (SBN 272087)
  dcardarelli@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA  90015
Telephone:  (213) 493-6496
Facsimile:   (213) 493-6596

Proposed Attorneys for Debtor in Possession
Figueroa Mountain Brewing, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>FIGUEROA MOUNTAIN BREWING, LLC,<br><br>Debtor in Possession. | Case No. 9:20-bk-11208-MB<br><br>Chapter 11<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR ORDER AUTHORIZING POSTPETITION DIP FINANCING UNDER §364(c)(1),(2) AND (3); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Hearing to be set by Court] |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, THE 20 LARGEST CREDITORS, AND

PARTIES REQUESTING SPECIAL NOTICE:

PLEASE TAKE NOTICE that Figueroa Mountain Brewing, LLC, the above-

referenced debtor and debtor in possession (the "Debtor"), hereby moves this Court for

entry of an Order: authorizing the Debtor to enter into a postpetition financing

agreement with Creekstone Mountain LLC and incur debt of up to $1,392,673.94 (the "DIP Loan") pursuant to Bankruptcy Code § 364(c)(1), (2) and (3) (the "Motion").  The details of the DIP Loan are set forth in the attached Memorandum of Points and Authorities.

PLEASE TAKE FURTHER NOTICE that the Motion is based on this Notice and Motion, the annexed Memorandum of Points and Authorities, the separately-filed Declaration of Jaime Dietenhofer, the attached "Statement Regarding Cash Collateral or Debtor in Possession Financing" [Form F 4001-2.STMT.FINANCE]  and other such evidence and argument as the Court may consider.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rules 9075-1, the Debtor seeks to have this Motion heard on less than 48 hours' notice at a date and time to be determined by the Court.  Once the Court has scheduled a hearing, the Debtor will provide separate notice of the hearing date and time, the instructions for appearing at the hearing by telephone or video, and the deadline for filing any opposition to the Motion.  The Debtor submits that the setting of the hearing on this Motion on an emergency basis is warranted given the critical need of the Debtor to use the cash collateral to continue operating the business.  Any opposition or other response to the Motion must be filed or presented to the Court and served on proposed counsel for the Debtor at the above address before the hearing or may be presented at the hearing.  Failure to timely object may be deemed by the Court to constitute consent to the relief requested.

DATED:  October 5, 2020                    LESNICK PRINCE & PAPPAS, LLP


                                           By:___/s/Matthew A. Lesnick_____
                                                Matthew A. Lesnick
                                                Proposed Counsel for
                                                Debtor in Possession
                                                Figueroa Mountain Brewing, LLC

### MEMORANDUM OF POINTS AND AUTHORITIES

Figueroa Mountain Brewing, LLC (the "Debtor") seeks authorization to enter into a postpetition debtor-in-possession financing agreement with lender Creekstone Mountain LLC and incur debt of up to $1,392,673.94 (the "DIP Loan").  This Motion is brought pursuant to Bankruptcy Code §§ 105(a) and 364(c)(1), (2) and (3), Federal Rules of Bankruptcy Procedure 4001 (c) and (d) and 9014.

**I.     RELIEF SOUGHT**

The Debtor seeks permission to enter into a DIP Loan Agreement in substantially the same form as the document attached as Exhibit A. The key terms of the proposed DIP Loan are as follows:

| | |
|---|---|
| **Loan Amount:** | Up to $1,392,673.94 |
| **Lender:** | Creekstone Mountain LLC |
| **Interest Rate:** | 11.00% per annum |
| **Monthly Payments:** | None |
| **Maturity Date:** | 60 days after effective date of confirmed chapter 11 plan |
| **Claim Treatment:** | Super-priority chapter 11 administrative expense status |
| **Security Interest:** | • 1st priority lien on all post-petition assets |
| | • Junior lien on all pre-petition assets |
| **Carveout:** | DIP Loan subordinate to allowed fees and expenses of Debtor's general bankruptcy counsel and all required costs and fees payable to the Bankruptcy Court, the United States Trustee, and the Subchapter V bankruptcy trustee |

**II.    STATEMENT OF FACTS**

**A.     General Background**

Figueroa Mountain Brewing, LLC (the "Debtor") is a brewery and operator of four taprooms where it serves its customers beer.  Additional facts about the Debtor and the circumstances leading to this bankruptcy case, as well as the facts supporting this

Motion are set forth in the separately-filed omnibus Declaration of Jaime Dietenhofer in support of all of the Debtor's first day motions.

### B.    The Debtor's Need for DIP Financing

In order for the Debtor to operate, it requires the use of cash.  Unfortunately, as set forth in the Dietenhofer Declaration, one of the Debtor's prepetition lenders, White Winston, swept all of the Debtor's cash and taken control of its bank accounts, leaving the Debtor with no ability to pay its suppliers, employees and other creditors.  In order to alleviate this situation, the Debtor has negotiated the DIP Loan Agreement with Creekstone Mountain LLC ("Creekstone").  The proposed DIP Loan would provide the Debtor with up to nearly $1.4 million to be used for the Debtor's operations and expenses during the bankruptcy case, including an initial and immediate advance of $250,000, which is sufficient to cover the Debtor's immediate cash needs, including payroll.  The DIP Loan Agreement provides that the Debtor will request advances of additional funds from Creekstone as needed.

### III.    ARGUMENT

### A.    Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    DIP Financing Should be Approved Under § 364(d)

Bankruptcy Code § 364, which governs the obtaining of postpetition financing by the debtor, provides, in pertinent part:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property that is subject to a lien.

11 U.S.C. § 364(c). Here, the proposed DIP Loan Agreement provides that Creekstone will receive a first-priority lien on all post-petition assets (which are currently unencumbered), and a junior lien on all pre-petition assets.

The Debtor has been unable to obtain unsecured financing strictly on an unsecured basis. New borrowing facilities are unavailable to the Debtor without the Court granting a super-priority administrative expense, a first-position lien on post-petition assets and a junior lien on pre-petition assets. The Debtor believes it to be impossible to obtain unsecured financing in any amount (or financing that is merely accorded administrative expense status), much less the amount necessary to sustain the Debtor's operations during the bankruptcy case.

**C.    DIP Financing is Necessary and in the Best Interests of Creditors**

The proposed DIP Loan provides the Debtor with sufficient funds to pay its continuing expenses necessary for the operation of its business during the pendency of this case. The Debtor believes that the interests of its creditors and other parties in interest will be served under the DIP Loan. Any debt incurred will be used to maintain business operations and pay costs associated with the bankruptcy case to enable the Debtor to reorganize and propose a plan that would offer creditors more than they would receive in a liquidation. For the reasons set forth above and in the Dietenhofer Declaration, the Debtor will be unable to operate without the DIP Loan. The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business, and necessary to avoid immediate and irreparable harm to the Debtor's estate.

### D.    The DIP Loan Agreement – Good Faith

The DIP Loan will provide new liquidity to the Debtor and will enable the Debtor to (a) minimize disruption to its business and on-going operations, (b) preserve and maximize the value of the Debtor's estate for the benefit of all the Debtor's stakeholders, (c) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees and its assets, and (d) permit the Debtor to propose a plan of reorganization that will offer more to creditors than if the Debtor were to cease operating and liquidate.

Such financing is the sole means of preserving and enhancing the Debtor's going concern value.  Indeed, without the proposed DIP Loan, the Debtor will not be able to meet its direct operating expenses, including payroll, and the Debtor will suffer irreparable harm.

The terms and conditions of the DIP Agreement, including the fees and expenses, are fair and reasonable and were negotiated by the parties in good faith and at arms' length.  Accordingly, the DIP lender should be accorded the benefits of § 364(e) and found to have acted in good faith.

A copy of the proposed DIP Loan Agreement is attached as Exhibit A.  The mandatory court form F4001-2.STMT.FINANCE is attached as Exhibit B.

### E.    The Policy of Favoring Reorganization Calls for Granting the Motion

A bankruptcy court, where possible, should resolve issues presented in favor of reorganization.  *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980); *In re Hoffman*, 51 B.R. 42, 47 (Bankr. W.D. Ark, 1085) (relief from stay); *In re A&B Heating and Air Conditioning, Inc.*  48 B.R. 401, 403-04 (Bankr. N.D. Fla. 1985) (injunction).

As the *Heatron* court stated in granting a Debtor's motion to use cash collateral, "[a]t the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting." *Heatron*, 6 B.R. at 496.

The Court of Appeals for the Tenth Circuit eloquently summarized the foregoing principle as follows:

Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor … are of concern to the court, the interests of all the creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

The first effort of the court must be to ensure that the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in a formative period prior to the proposal of a reorganization, the court must be flexible in approving the adequate protection standard."

*MBank Dallas, N.A. v. O'Connor (In re O'Conner)*, 808 F.2d 1393, 1397 (10th Cir. 1987).

The proposed DIP Loan will not only preserve the value of the Debtor's business for the benefit of both unsecured creditors and prepetition secured creditors. Because the prepetition secured creditors are maintaining their security interests in prepetition collateral in the same priority as they were prior to the commencement of the bankruptcy case, they will suffer no harm if this Court grants interim and long term relief.

## IV.    CONCLUSION

For the foregoing reasons, the Debtor respectfully request that the Court enter an Order (1) granting the Motion on an interim basis and authorizing the Debtor to enter into the proposed DIP Loan in substantially the same form as the DIP Loan Agreement attached as Exhibit A, (2) authorizing the Debtor to incur debt up the amounts and on the terms and conditions set forth in the DIP Loan Agreement, (3) granting Creekstone Mountain LLC a chapter 11 super-priority administrative expense claim and liens on pre-petition and post-petition assets, subject to the Carveout, all as set forth above and in the DIP Loan Agreement, (4) setting a final hearing on the Motion, and (5) granting

such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  October 5, 2020                    LESNICK PRINCE & PAPPAS LLP


By:___/s/Matthew A. Lesnick_____
            Matthew A. Lesnick
            Proposed Counsel for
            Debtor in Possession
            Figueroa Mountain Brewing, LLC

# EXHIBIT A

## AGREEMENT FOR DEBTOR IN POSSESSION FINANCING

This agreement (this "Agreement") is entered into as of October____, 2020 by and between Creekstone Mountain LLC, or its assignee or designee ("CM") and Figueroa Mountain Brewing, LLC, a debtor and debtor in possession in that certain chapter 11 bankruptcy case filed by Debtor (as defined herein) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") ("FMB" or the "Debtor" and together with CM  referred to as the "Parties").

### *Agreement*

1.    <u>Agreement to Provide Financing:</u>  For so long as no Event of Default (as defined herein) has occurred under this Agreement or under the note(s), and subject to the other terms of this Agreement and note(s):

a.    CM agrees to loan FMB an amount of not more than One Million Three Hundred Ninety-Two Thousand Six Hundred Seventy-Three and 94/100 Dollars ($1,392,673.94) (the "DIP Loan") to be used for the operation of FMB's Business and the expenses of administering the Bankruptcy Case, in accordance with the terms and conditions herein, as follows: (i) the sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) (the "Initial Advance") to be immediately funded and deposited into the Debtor's Debtor-in-Possession operating account (the "DIP Account"); and (ii) the balance of the DIP Loan (less the Initial Advance) to be funded in accordance with section 1 (b) herein.  Any amounts actually loaned to FMB under this Agreement, including the Initial Advance, shall be referred to as the "Loan Proceeds".

b.    All requests for advances on the DIP Loan, other than the Initial Advance, shall be made by FMB by submitting requisitions to CM for its approval, which shall be within CM's sole and absolute discretion, which requisitions shall detail the amount of the advance requested and for what purpose the advances will be used. CM agrees to finance advances of the DIP Loan upon its approval of such requisitions, at which time such advances shall become Loan Proceeds. All such Loan Proceeds shall be referred to herein as "CM Post- Petition Secured Debt." All Loan Proceeds shall be reflected on one or more promissory notes in substantially the form attached hereto as Exhibit A. The CM Post-Petition Secured Debt shall enjoy chapter 11 administrative super-priority status and be secured by (a) a first priority lien on any and all post-petition assets, including but not limited to inventory, accounts receivables, cash and cash equivalents, equipment, merchandise, real and intellectual property and all other tangible and intangible assets of FMB and the estate pursuant to Section 364(d) of the Bankruptcy Code, collected, created, generated or in any way received on or after the commencement of the Bankruptcy Case (the "Post-Petition Assets"), which shall be senior in all respects to any other creditor of Debtor; (b) and a lien on any and all pre-

petition assets, including but not limited to inventory, accounts receivables, cash and cash equivalents, equipment, merchandise, real and intellectual property and all other tangible and intangible assets of FMB and the estate pursuant to Section 368(d) of the Bankruptcy Code, collected, created, generated or in any way received prior to commencement of the Bankruptcy Case (the "Pre-Petition Assets") that is junior to existing, valid liens securing allowed claims on the Pre-Petition Assets. For avoidance of doubt, no request for advances made on the DIP Loan shall become Loan Proceeds without CM's prior written approval, which approval shall be within CM's sole and absolute discretion. Notwithstanding the foregoing, CM's lien and priority status shall be junior to any allowed chapter 11 administrative expense claim of FMB's general bankruptcy counsel and any required costs or fees payable to the Bankruptcy Court, the Office of the United States Trustee, and the Subchapter V bankruptcy trustee (collectively, the "Chapter 11 Carveout").

2.    Bankruptcy Court Approval:    This Agreement shall not become binding on either of the Parties until it is approved by the Bankruptcy Court.

3.    Representations and Covenants: FMB represents and covenants that, other than the Chapter 11 Carveout: (a) it shall not incur any indebtedness whatsoever, nor shall it, nor any of its members or affiliates, secure any indebtedness secured by any Pre-Petition Assets or Post-petition Assets  which is either superior or *pari passu* to the CM Post-Petition Secured Debt, nor shall it afford any lender an administrative super priority superior to or sharing *pari passu* with the priority granted under this Agreement and the Note without the prior written consent of CM, which consent shall be within CM's sole and absolute discretion; (b) it shall not submit the Pre-Petition Assets or Post-Petition Assets for any auction or bidding process outside of the ordinary course of business nor offer or seek to conclude or conclude a sale of all or any portion of the Pre-Petition Assets or Post-Petition Assets outside of the ordinary course of business to any party whatsoever without the prior written consent of CM, which shall be within CM's sole and absolute discretion; (c) it shall not use the DIP Loan and/or Loan Proceeds  other than in accordance with the terms and conditions of this Agreement;  and (d) neither it nor any of its member shall transfer or assign in any way all or any portion of a membership interest in FMB without CM's prior written approval, which shall not be unreasonably withheld.

4.    Events of Default: The following shall constitute Events of Default under this Agreement:

a.    The appointment of a Trustee or an Examiner with expanded powers, including appointment resulting from a conversion to Chapter 7;

b.    Conversion to a Chapter 7;

c.    Dismissal of the Bankruptcy Case;

d.    Breach of a Representation or Covenant in this Agreement that remains un-cured

for a period of more than ten (10) days following receipt of written notice by CM;

    e.    A breach or default under the note(s) that remains un-cured for a period of more than ten (10) days following receipt of written notice;

    f.    FMB fails to provide statements of accounts for the DIP Account upon request from CM;

    g.    The CM Post-Petition Secured Debt shall not have been paid in full on or before the Maturity Date (as defined herein).

    5.  <u>Consequences of Default</u>: Upon the occurrence of an Event of Default, consent to use the DIP Loan and Loan Proceeds shall automatically terminate, the entirety of the Post-Petition Secured Debt shall be accelerated and shall become immediately due and payable, and FMB shall cooperate with CM's efforts to enforce its rights under the Agreement and notes as applicable with respect to the CM Post-Petition Secured Debt, all subject to the approval of the Bankruptcy Court.

    6.    <u>Maturity Date</u>: The Loan Proceeds shall be repaid to CM no later than sixty (60) days after the effective date of a confirmed chapter 11 plan, subject to the terms herein.

    7.    <u>Interpretation</u>. This Agreement is to be construed simply and fairly, and not strictly in favor of or against FMB or CM. This Agreement was prepared and negotiated jointly by the parties.

    8.    <u>No Indemnification</u>. Nothing in this Agreement shall be interpreted as a promise or an agreement to indemnify; provided, however that in the event of an Event of Default under this Agreement of the Note, FMB shall reimburse CM for costs and expenses incurred as a result of enforcement of this Agreement and/or the Note, including, but not limited to, reasonable attorney's fees.

    9.    <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of New York.

    10.    <u>Sole and Only Agreement</u>. CM and FMB agree that this instrument constitutes the sole and only agreement between the parties with respect to the subject matter hereof and correctly sets forth the rights, duties and obligations of each to the other as of its date. The terms of this Agreement are contractual and not mere recitals. This Agreement is executed without reliance upon any representation by any person, and the parties hereto have carefully read and understand the contents of this Agreement and sign the same as their own free act.

    11.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and bind the successors and assigns of the parties, including without limitation any Chapter 7 trustee.

    12.    <u>Captions</u>. The captions of this Agreement are for convenience only and are not a

part of this Agreement and do not in any way limit or amplify the terms and provisions of this Agreement and shall have no effect on its interpretation.

13. <u>Counterparts</u>. This Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties by their duly authorized representatives, have executed this Agreement as of the date first set forth above.

CREEKSTONE MOUNTAIN LLC            FIGUEROA MOUNTAIN BREWING, LLC
a New York limited liability                a California limited liability company
company


By:_____            By:_____
  Name:                                      Name:
  Title:                                      Title:

# PROMISSORY NOTE

$_____                  New York, New York                  _____, 2020

FOR VALUABLE CONSIDERATION, Figueroa Mountain Brewing, LLC, a California limited liability company, having an address at 45 Industrial Way, Buellton, CA 93427 ("Payor") promises to pay to CREEKSTONE MOUNTAIN LLC, a New York limited liability company, having an address at 17 – 21 W. Montecito Street, Santa Barbara, CA 93101 ("Holder") or its assigns, or order, at 17 – 21 W. Montecito Street, Santa Barbara, CA 93101, or some other address designated by Holder,, the principal sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) (the "Principal Sum"), and accrued interest thereon no later than sixty (60) days after the effective date of a confirmed chapter 11 plan of reorganization in that certain bankruptcy action filed by Payor in the United States Bankruptcy Court for the Central District of California, on_____ (the "Bankruptcy Case) (the "Maturity Date"), in accordance with the terms herein. Interest shall accrue at the rate of eleven percent (11%) per annum on the outstanding indebtedness.

In the event that under any law applicable to this Note, the rate of interest, provided for hereunder shall be in excess of the amount permitted by law at any time, then the interest provided for hereunder shall be deemed reduced to the maximum rate permitted by law.

1. **Representations and Covenant of Payor**.

Payor represents and covenants that those certain representations and covenants made under that certain Agreement for Debtor in Possession Financing entered into between Payor and Holder on _____ (the "Agreement") will be true, correct and complete in all material respects and shall continue in full force and effect until the full and final payment, and satisfaction and discharge, of this Note.

2. **Default.**

2.1    Events of Default.  The occurrence of any of the following shall constitute an "Event of Default" under this Note:

(a)  Payor shall fail (a) to pay when due any principal or interest payable under this Note, or (b) to pay any other amount payable under this Note when due;

(b)  Payor breaches or shall fail to observe or perform any obligation, covenant or other provision contained in this Note, which failure is not cured within ten (10) business days after notice thereof from the Holder;

(c)  a breach or default under the Agreement;

(d) Payor shall fail to perform or observe any terms, covenant or agreement contained in any other agreement with Holder, including the Agreement, and such failure shall remain uncured, subject to applicable cure periods in the agreements.

2.2    Remedies.  If an Event of Default shall occur any indebtedness of Payor under this Note shall, at the option of the Holder, and without further notice, become immediately due and payable without presentment, demand, protest or notice of dishonor, all of which are hereby expressly waived by Payor, and the Holder shall have all rights, powers and remedies available under this Note, or accorded by law.  All rights, powers and remedies of the Holder may be exercised by the Holder at any time and from time to time after the occurrence of the Event of Default.  All rights, powers and remedies of the Holder in connection with this Note are cumulative and not exclusive and shall be in addition to any other rights, powers or remedies provided by law or equity.  Notwithstanding the foregoing, Holder understands that its rights and remedies may be subject to the approval of the Bankruptcy Court or restricted by applicable law.

2.3    No Waiver.  No delay, failure or discontinuance of the Holder in exercising any right, power or remedy under this Note shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other further exercise thereof or the exercise of any other right, power or remedy.  Any waiver, permit, consent or approval of any kind by the Holder of any breach of or default under this Note must be in writing and shall be effective only to the extent set forth in such writing.

## 3.    UCC Financing Statement.

In order to induce Holder to lend monies under this Note to Payor, Payor has authorized Holder to file a UCC-1 Financing Statement, in the form attached hereto as Exhibit A (the "UCC") with the Secretary of State for the State of California.

## 4.    Miscellaneous.

4.1    Waiver and Amendment.  No amendment of any provision of this Note shall be effective unless such amendment is in writing and signed by Payor and the Holder.  No waiver by any party of any provision of this Note, or of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be effective unless such waiver is in writing and signed by the party against whom enforcement of such waiver is sought, and no such waiver shall be deemed to apply to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or to affect in any way any rights or obligations with respect to any such prior or subsequent occurrence.

4.2    Waiver of Presentment, Etc.  Except as otherwise expressly provided herein, Payor waive presentment, demands, notice, protest and all other demands and notices in

connection with the delivery, acceptance, performance, default or enforcement of this Note.  In any action on this Note, Holder or its assignee need not produce or file the original of this Note, but need only file a photocopy of this Note certified by Holder or such assignee to be a true and correct copy of this Note in all material respects.

4.3    Headings.  The article and section headings in this Note have been inserted for identification and reference and shall not by themselves determine the meaning or interpretation of any provision of this Note.

4.4    Expenses.  All costs and expenses, including, without limitation, reasonable attorneys' fees and expenses and UCC filing fees expended or incurred by the Holder in connection with the drafting, negotiation and/or enforcement of this Note, the collection of any sums due hereunder or thereunder, any actions for declaratory relief in any way related to this Note, or the protection or preservation of any rights of the Holder hereunder or thereunder shall be recoverable by the Holder as additional payments due to the Holder under this Note, provided that such costs and expenses shall become due and payable on the earlier of the Maturity Date or the date such costs and expenses are incurred. Notwithstanding anything to the contrary contained herein, any legal fees incurred in connection with the drafting and negotiation of this Note shall paid to Holder no later than ten (10) days from the date first written above.

4.5    Notices.  Any notice or other communication required or permitted to be given under this Note shall be in writing, shall be delivered personally, or by telecopier, or by registered or certified mail, postage prepaid, and shall be deemed received upon delivery, if delivered personally, 12 hours after receipt of confirmation of transmission, if delivered by telecopier, or three days after deposit in the mails, to the following addresses:

|  |  |
|---|---|
| If to the Payor: | Figueroa Mountain Brewing, LLC<br>Attn: Jaime Dietenhofer, Manager<br>45 Industrial Way<br>Buellton, CA 93427 |
| With a copy to: | Lesnick Prince & Pappas LLP<br>Attn: Christopher E. Prince<br>315 W. Ninth Street, Suite 705<br>Los Angeles, CA 90015 |
| If to Holder: | Creekstone Mountain LLC<br>511 Canal Street, 6th Floor<br>New York, New York 10013<br>Attn: Veracity Partners, LLC |
| With a copy to: | JIMMY CHEHEBAR, ESQ.<br>511 Canal Street, 6th Floor<br>New York, New York 10013 |

or to such other address as a party may have furnished to the other party in writing.

4.6    <u>Successors and Assigns</u>.  Payor may not assign any of his rights or delegate any of his obligations hereunder without the prior written consent of Holder, which consent shall be in holder's sole and absolute discretion.  This Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors, personal representatives and permitted assigns.

4.7    <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws which would direct the application of another jurisdiction's laws.

IN ANY ACTION,  SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, PAYOR WAIVE (i) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF  ANY  NATURE  OR  DESCRIPTION, (ii) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE AND (iii) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

The Payor of this Note each irrevocably submit to the exclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Note.  Payor irrevocably waives, to the fullest extent they may effectively do so under applicable law, any objection they may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that  the same has been brought  in an inconvenient forum. Payor hereby consents to any and all process which may be served in any such suit, action, or proceeding at the address provided for at Section 4.5 herein (i) by personal service;  or (ii) by mailing  a copy thereof by Federal Express (or other equivalent national overnight courier) for next business  day delivery with the cost of delivery prepaid or for the account of the sender; and shall be deemed to have been given (a) when delivered, if delivered in person or (b) on the next business day of sent by overnight courier.

4.8    The Payor hereof each authorize the Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by the Holder, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

4.9    <u>Severability</u>.  Any term or provision of this Note that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof, or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.  If final judgment of a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, the parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or

unenforceable term or provision, and this Note shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

     4.10   <u>Construction</u>.  The language used in this Note will be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction shall be applied against any party.  Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.

PAYOR

FIGUEROA MOUNTAIN BREWING, LLC

_____

EXHIBIT A

UCC Filing Statement

(attached)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Jimmy Chehebar - (212) 924-3100

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

**CREEKSTONE MOUNTAIN LLC**
**17 - 21 W. Montecito St.**
**Santa Barbara, CA 93101**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Figueroa Mountain Brewing, LLC,** | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **45 Industrial Way** | **Buellton** | **CA** | **93427** | **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | **LLC** | **CA** | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Creekstone Mountain LLC** | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **17 - 21 W. Montecito St.** | **Santa Barbara** | **CA** | **93101** | **USA** |

4. This FINANCING STATEMENT covers the following collateral:

**All goods (including inventory, equipment, materials), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), accounts receivable, letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities, money, wages, bonuses, deposit accounts, real property, intellectual property, tangible and intangible property and assets and any other contract rights or rights to the payment of money, whether now owned or acquired later from October 5, 2020.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
[UCC1-Premier Enterprise]

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# EXHIBIT B

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Matthew A. Lesnick (SBN 177594)<br>Christopher E. Prince (SBN 183553)<br>Debra E. Cardarelli (SBN 272087)<br>LESNICK PRINCE & PAPPAS LLP<br>315 W. Ninth Street, Suite 705<br>Los Angeles, CA 90015<br>Telephone: (310) 396-0964<br>Facsimile: (213) 493-6596 | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Figueroa Mountain Brewing, LLC | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION

| In re:<br><br>Figueroa Mountain Brewing, LLC<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.:<br>CHAPTER:  11 |
|---|---|
| | **STATEMENT REGARDING<br>CASH COLLATERAL OR<br>DEBTOR IN POSSESSION FINANCING<br>[FRBP 4001; LBR 4001-2]** |
| | DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |

| Secured party(ies): |
|---|
| |

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| | **Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B)** | **Page No.:** | **Line No.** (if applicable) |
|---|---|---|---|
| ☒ | (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | 1 | ¶1(b) |
| ☐ | (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim" | None | |
| | ☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | | |
| | ☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | Page No.: | Line No. (if applicable) |
|---|---|---|---|
| | *Continued from page 1*<br>☐    Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | None | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br>☐    Automatic relief from the automatic stay upon occurrence of certain events. | None | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | None | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | None | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | None | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | None | |
| ☐ | (ix): "[T]he indemnification of any entity" | None | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>☐    The granting of any lien on any claim or cause of action arising under § 506(c) | None | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | None | |
| **Additional Disclosures Required by LBR 4001-2** | | **Page No.:** | **Line No. (if applicable)** |
| ☒ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | 2 | ¶1(b) |
| ☐ | Pay down prepetition principal owed to a creditor | None | |
| ☐ | Findings of fact on matters extraneous to the approval process | None | |

| 10/05/2020 | Matthew A. Lesnick | Matthew A. Lesnick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Lesnick Prince & Pappas LLP, 315 W. Ninth Street, Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled: **STATEMENTREGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/01/2020    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/01/2020    , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/01/2020 | | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR ORDER AUTHORIZING POSTPETITION DIP FINANCING UNDER §364(C)(1),(2) AND (3); MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/05/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov
- **Christopher E Prince**    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/05/2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Honorable Martin R. Barash
21041 Burbank Blvd., Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/05/2020 | Janet A. Mack | /s/Janet A. Mack |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**