1  EVE H. KARASIK (State Bar No. 155356)
   JULIET Y. OH (State Bar No. 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email:  EHK@LNBYB.COM; JYO@LNBYB.COM

6  JEFFREY D. STERNKLAR (Mass. State Bar No. 549561)
7  JEFFREY D. STERNKLAR LLC
   101 Federal Street, Suite 1900
8  Boston, Massachusetts 02110
   Telephone: (617) 207-7800
9  Facsimile:  (617) 507-6530
   Email:  JEFFREY@STERNKLARLAW.COM
10 (Pro Hac Vice Admission)

11
   Counsel for White Winston Select Asset Funds, LLC
12
              UNITED STATES BANKRUPTCY COURT
13
              CENTRAL DISTRICT OF CALIFORNIA
14
                    NORTHERN DIVISION
15

16 | In re: | Case No. 9:20-bk-11208-MB |
17 | FIGUEROA MOUNTAIN BREWING, LLC, | Chapter 11 |
18 | | **NOTICE OF MOTION AND MOTION TO** |
19 | Debtor in Possession. | **STRIKE SMALL BUSINESS DEBTOR DESIGNATION AND SUBCHAPTER V** |
20 | | **ELECTION BY DEBTOR IN CHAPTER 11 PETITION; DECLARATIONS OF ROBERT** |
21 | | **P. MAHONEY AND JULIET Y. OH IN SUPPORT THEREOF** |
22 | | |
23 | | Hearing: |
24 | | Date:  November 18, 2020 |
   | | Time:  1:30 p.m. |
25 | | Place:  Courtroom "201" (ZoomGov) |
   | | 1415 State Street |
26 | | Santa Barbara, California 93101 |

27

28

1

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 4

I.    INTRODUCTORY STATEMENT ................................................................... 4

II.   STATEMENT OF RELEVANT FACTS ......................................................... 6

III.  DISCUSSION ................................................................................................. 9

IV.   CONCLUSION ............................................................................................... 13

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Chamber of Commerce of United States of America v. Whiting,*
    563 U.S. 582, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011) ........................................................ 11

5

6

*Puerto Rico v. Franklin California Tax-Free Trust,*
    136 S.Ct. 1938, L.Ed.2d 298 (2016) ........................................................ 11

7

8

*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ........................................................ 11

9

**Federal Statutes**

10

11 U.S.C. § 101(51D) ........................................................ *passim*

11

11 U.S.C. § 1182(1) ........................................................ 2

12

11 U.S.C. § 303(b)(1) ........................................................ 11

13

11 U.S.C. §§ 1181-1195 ........................................................ 9

14

CARES Act ........................................................ 11

15

**Other Authorities**

16

17

Fed. R. Bankr. P. 1020 ........................................................ 2, 10

18

Local Bankruptcy Rule 9013-1(f) ........................................................ 2

19

Local Bankruptcy Rule 9013-1(h) ........................................................ 3

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, UNITED STATES TRUSTEE, SUBCHAPTER V TRUSTEE, THE DEBTOR AND ITS PROPOSED COUNSEL, SECURED CREDITORS OF THE DEBTOR, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTOR, AND PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Martin R. Barash, United States Bankruptcy Judge for the Central District of California, Northern Division, on November 18, 2020 at 1:30 p.m. via ZoomGov, for the Court to consider this *Notice Of Motion And Motion To Strike Small Business Debtor Designation And Subchapter V Election By Debtor In Chapter 11 Petition* (the "Motion") filed by White Winston Select Asset Funds, LLC ("White Winston"), pursuant to which White Winston objects to, and seeks the entry of a Court order striking, the small business debtor designation and Subchapter V election made by Figueroa Mountain Brewing, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), in the Debtor's chapter 11 voluntary petition filed on October 5, 2020.  ZoomGov video and audio connection information for the hearing on the Motion will be provided on the Court's publicly posted hearing calendar, which may be viewed online at http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/default.aspx.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon 11 U.S.C. §§ 101(51D) and 1182(1), Rule 1020 of the Federal Rules of Bankruptcy Procedure, Rule 1020 of the Interim Amendments to the Federal Rules of Bankruptcy Procedure, this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declaration of Robert P. Mahoney and Declaration of Juliet Y. Oh annexed hereto, the entire record of the Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at, or prior to, the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any interested party that wishes to oppose the relief requested in the Motion must, not later than fourteen (14) days prior to the scheduled hearing date set forth above, file with the Clerk of

2

1  the Bankruptcy Court and serve upon counsel for White Winston (whose name and address are set

2  forth on the upper left-hand corner of the first page of this Notice) and the United States Trustee,

3  "[a] complete written statement of all reasons in opposition thereto ..., declarations and copies of

4  all photographs and documentary evidence on which the responding party intends to rely, and any

5  responding memorandum of points and authorities."

6      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

7  1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to

8  constitute consent to the relief requested in the Motion.

9      **WHEREFORE**, White Winston respectfully requests that the Court enter an order:

10     (1)    granting the Motion;

11     (2)    sustaining White Winston's objection to, and striking, the small business debtor

12  designation and Subchapter V election made by the Debtor in the Debtor's chapter 11 voluntary

13  petition; and

14     (3)    granting such other and further relief as the Court deems just and proper under the

15  circumstances of the Debtor's bankruptcy case.

16  Dated: October 28, 2020        WHITE WINSTON SELECT ASSET FUNDS, LLC

17                  */s/ Juliet Y. Oh*

                  EVE H. KARASIK
18                  JULIET Y. OH

19                  LEVENE, NEALE, BENDER, YOO
                     & BRILL L.L.P.
20

21                  -and-

22                  Jeffrey D. Sternklar (Pro Hac Vice)
                  JEFFREY D. STERNKLAR LLC
23

24                  Counsel for Secured Creditor,
                  White Winston Select Asset Funds, LLC

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTORY STATEMENT**

White Winston Select Asset Funds, LLC ("White Winston") hereby asserts its objection to, and seeks the entry of an order of this Court striking, the small business debtor designation and Subchapter V election made by Figueroa Mountain Brewing, LLC, the debtor and debtor-in-possession herein (the "Debtor"), in the Debtor's chapter 11 voluntary petition [Doc. No. 1] (the "Petition") filed on October 5, 2020 (the "Petition Date").  Based upon information provided to date by the Debtor itself, the total amount of the Debtor's "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition…(excluding debts owed to 1 or more affiliates or insiders)" far exceeds the current debt limit of $7,500,000 prescribed by 11 U.S.C §101(51D).  Accordingly, the Debtor does not qualify as a "small business debtor" and cannot avail itself of the provisions of Subchapter V of Chapter 11 of the Bankruptcy Code.

Although White Winston has attempted to resolve the issues raised in this Motion with the Debtor without seeking the intervention of this Court[1], the Debtor has declined to address the substance of the issues raised by White Winston to date, stating only that the Debtor disputes White Winston's conclusions and that White Winston should wait until the Debtor has filed its bankruptcy schedules (which are currently due on November 9, 2020) and the parties have an opportunity to meet and confer thereafter.  Given the compressed timelines presented by Subchapter V and the continuing participation of a duly appointed Subchapter V trustee who may

---

[1] On October 21, 2020, counsel for White Winston sent a letter to counsel for the Debtor which raised the issues described in this Motion, provided the Debtor with White Winston's detailed analysis of the Debtor's aggregate noncontingent liquidated debts, and requested that the Debtor file an amendment to the Petition by October 26, 2020 to eliminate its designation as a "small business debtor" and election to proceed under Subchapter V.  A true and correct copy of the foregoing letter is attached as **Exhibit F** to the Declaration of Juliet Y. Oh annexed hereto.  As reflected in such letter, the Debtor and its counsel were advised that White Winston would proceed with the filing of a formal motion if the Debtor did not file an amendment to the Petition as requested.  The Debtor did not file an amendment to the Petition as requested by October 26, 2020.  Accordingly, White Winston filed this Motion.

1  ultimately be dismissed if the Court determines that the Debtor is not qualified to be a Subchapter

2  V small business debtor, White Winston believes that it is in the best interests of all parties (not

3  just White Winston) to determine whether the Debtor's small business debtor designation and

4  Subchapter V election are appropriate as soon as possible, without any further delay.[2]  Moreover,

5  White Winston submits that the information required to make the foregoing determination – *i.e.*,

6  the total amount of the Debtor's non-insider debts – is readily accessible by the Debtor and limited

7  in scope[3], so the request to have the Debtor address the issues raised in this Motion at this time is

8  reasonable and presents no undue burden on the Debtor.

9       Based on the foregoing, White Winston respectfully requests that the Court consider the

10  Motion at the hearing set on November 18, 2020 and, for the reasons set forth in this Motion, enter

11  an order sustaining White Winston's objection to, and striking, the small business debtor

12  designation and Subchapter V election made by the Debtor in its Petition.

13  / / /

14  / / /

15  / / /

16

17       [2] If this Motion is not heard on November 18, 2020 as requested herein, the next available
    self-calendaring hearing date for the Motion is December 16, 2020 (and then January 13, 2021).

18

19       [3] White Winston does not believe that a shutdown of the Debtor's business operations and
    the liquidation of the Debtor's assets is in the best interests of any creditors (including White
20  Winston), and White Winston wishes to support a reorganization process which results in the
    successful restructuring of the Debtor's debts and business.  However, White Winston does not
21  have faith that the Debtor's current management team can provide accurate reporting regarding its
    operational and financial performance (given that the financial information and projections
22  provided by the Debtor to date have been riddled with errors), run the Debtor's business in a cost-
    effective and cash-flow positive manner, or successfully identify and implement a reorganization
23  strategy in a timely manner.  The Debtor's incorrect conclusion that the total amount of its
    aggregate noncontingent liquidated debts as of the Petition Date fell within the $7,500,000 debt
24  limit for small business debtors is yet another example of the inability of the Debtor's current
    management team to provide accurate financial information.  White Winston believes that it is
25  appropriate and necessary for a trustee to be appointed in the Debtor's case (once the Debtor is
    determined not to be a "small business debtor" and is taken out of Subchapter V) or, alternatively,
26  for a third party management company or officer to be brought in, to run the Debtor's business
    operations and lead the Debtor's reorganization process.
27

28

## II.

## STATEMENT OF RELEVANT FACTS

1.       In the Petition, the Debtor designated that it is a "small business debtor" and made an election to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.  By making such designation, the Debtor contends that it has "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition…in an amount not more than $7,500,000[4] (excluding debts owed to 1 or more affiliates or insiders)."  *See* 11 U.S.C § 101(51D).

2.       The Petition reflects that the Debtor has between 200-999 creditors and estimated liabilities totaling between $1,000,001-10,000,000.

3.       White Winston has prepared a summary of the Debtor's debts as of the Petition Date using information provided by the Debtor in pleadings filed in its bankruptcy case and/or information provided directly by the Debtor to White Winston.  The foregoing summary (the "Debt Summary") is attached as **Exhibit A** to the Declaration of Robert P. Mahoney annexed hereto (the "Mahoney Declaration").

4.       On October 12, 2020, the Debtor submitted its *Statement Re Reporting Per Interim Order Approving Debtor's Request For Approval Of Limited Emergency Postpetition DIP Financing To Fund Noninsider Payroll Due October 9, 2020* [Doc. No. 64] (the "October 12 Reporting").  Included in the October 12 Reporting, at pages 223-289, is a list of "Unpaid Bills as of October 5, 2020" totaling $5,825,216.68 (the "FMB Prepetition Debt List").   The FMB Prepetition Debt List does not include the secured debts owed by the Debtor to Montecito Bank & Trust ("MBT") and White Winston.

5.       When the Debtor's insider debts are deducted from the FMB Prepetition Debt List, the adjusted total amount of the Debtor's pre-petition non-insider unsecured debt is

---

[4] Under the Coronavirus Aid, Relief and Economic Security (CARES) Act, which became effective March 27, 2020, the aggregate debt limit for a Subchapter V debtor was temporarily increased to $7,500,000.

**$5,156,669.64**[5], as follows:

| | | |
|---|---|---|
| Total debt reflected in FMB Prepetition Debt List | *See* Doc. No. 64, p. 239 | $5,825,216.68 |
| Figueroa Mountain Brewing Co. Westlake Village | *See* Doc. No. 64, p. 247 | ($24,480.17) |
| Fig Mountain Productions | *See* Doc. No. 64, pp. 247-48 | ($69,382.30) |
| FME Arroyo Grande (Avenida Caballo) | *See* Doc. No. 64, p. 251 | ($368,959.32) |
| Jaime Dietenhofer | *See* Doc. No. 64, pp. 256-57 | ($118,416.71) |
| Judie Dietenhofer | *See* Doc. No. 64, pp. 258-59 | ($87,308.54) |
| **Adjusted debt total:** | | **$5,156,669.64** |

6.    The FMB Prepetition Debt List excludes certain debts owed by the Debtor, including, without limitation, the secured debts owed by the Debtor to MBT and White Winston. Those excluded debts that White Winston is aware of are set forth in the table below. When the total amount of these excluded debts are added to the total amount of the Debtor's prepetition non-insider debt from paragraph 5 above, the Debtor's non-insider debt actually totals at least **$19,974,943.30**.

| | | |
|---|---|---|
| Adjusted debt total from FMB Prepetition Debt List | *See* paragraph 5 above | $5,156,669.64 |
| Montecito Bank & Trust (Loan Nos. 6227896 & 6228244) | *See* FMB Prepetition Debt List, Doc. No. 4, p. 263 (no loan balances listed), but compare Doc. No. 64, pp. 5-6 (payoff statements for loans) | $3,421,263.93 (unreported amount) |
| White Winston Select Asset Funds, LLC | *See* payoff statement attached as **Exhibit B** to the Mahoney Declaration annexed hereto | $9,490,718.30 |

[5] This adjusted total debt amount assumes that the Debtor's list of "Unpaid Bills as of October 5, 2020" is accurate.  However, based on information provided elsewhere in the Debtor's October 12 Reporting and in the proofs of claim that have been filed in the Debtor's bankruptcy case to date, the Debtor's list appears to underreport the amount of the Debtor's pre-petition unsecured debts.  As one example, the Debtor's list reflects total debt of $59,085.67 owed to Ahern Rentals Inc. as of the Petition Date.  However, the proof of claim filed by Ahern Rentals Inc. (Claim No. 1) reflects that the Debtor owes $85,074.37.  For purposes of this Motion, White Winston has not made any adjustments to the debt amounts reported by the Debtor in an effort to keep the analysis set forth herein as simple as possible.

| Allan Texeira (loan) | *See* FMB Prepetition Debt List, Doc. No. 64, p. 225 ($19,932.54 listed), but compare Petition, Doc. No. 1, p. 10 ($300,000 listed, as undisputed) | $280,067.46 (underreported amount) |
|---|---|---|
| California State Board of Equalization (sales taxes) | *See* FMB Prepetition Debt List, Doc. No. 64, p. 282 ($84,532.53 sales taxes listed), but compare Doc. No. 64, p. 222 ($396,477.12 sales taxes listed) | $311,944.59 (underreported amount) |
| Mechanics Bank | *See* FMB Prepetition Debt List, Doc. No. 64, p. 262 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($944,950.00 listed, as undisputed) | $944,950.00 (unreported amount) |
| Ultimate Funding Solutions | *See* FMB Prepetition Debt List, Doc. No. 64, p. 286 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($69,996.56 listed, as disputed) | $69,996.56 (unreported amount) |
| Unique Funding Solutions LLC | *See* FMB Prepetition Debt List, Doc. No. 64, p. 285 (no debt listed), but compare judgment entered against Debtor and others on 8/15/2019 attached as **Exhibit C** to the Mahoney Declaration annexed hereto | $149,332.82 (unreported amount) |
| U.S. Small Business Administration | *See* FMB Prepetition Debt List, Doc. No. 64, p. 286 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($150,000.00 listed, as undisputed) | $150,000.00 (unreported amount) |
| **Total debt amount:** | | **$19,974,943.30** |

7.    Even if the claim asserted by White Winston, in the sum of $9,490,718.30, is deducted in its entirety from the total amount of the Debtor's non-insider debt calculated above (*i.e.*, $19,974,943.30), the Debtor still has total non-insider debt of at least $10,484,225.00.

8.    The total estimated amount of the Debtor's non-insider debt (excluding White Winston's claim), in the sum of $10,484,225.00, is consistent with the total debt amounts reported by the Debtor in the past, including:

a.    the total debt amount reported by the Debtor as of December 31, 2018, in

1    the sum of $12,374,908, which was prior to White Winston's involvement with the Debtor

2    (*see*, Debtor's 2018 federal income tax return, Doc. No. 1, p. 100); and

3        b.    the total debt amount reported by the Debtor as of November 30, 2019, in

4    the sum of $15,278,012.38, as reflected in the Balance Sheet prepared by the Debtor and

5    provided to White Winston, of which approximately $12,845,487.75 appear to relate to

6    non-insider debt[6] (*see* Debtor's Balance Sheet as November 30, 2019 attached as **Exhibit**

7    **D** to the Mahoney Declaration annexed hereto).

8                                        **III.**

9                                    **DISCUSSION**

10    On August 23, 2019, the Small Business Reorganization Act of 2019 (the "SBRA") was

11    enacted into law.  The SBRA made many substantive and procedural changes to the Bankruptcy

12    Code, including the addition of Subchapter V [Small Business Debtor Reorganization] under

13    Chapter 11 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1181-1195.

14    The SBRA required changes to the Federal Rules of Bankruptcy Procedure (the

15    "Bankruptcy Rules") to implement the changes made by the SBRA to the Bankruptcy Code.

16    However, the February 19, 2020 effective date of the SBRA was to occur long before the

17    Bankruptcy Rules could be amended under the three-year process required by the Rules Enabling

18    Act.  Accordingly, the Interim Amendments to the Federal Rules of Bankruptcy Procedure (the

19    "Interim Rules") were prepared by the Advisory Committee on Bankruptcy Rules and approved

20    by the Judicial Conference of the United States to be adopted as local rules by the Bankruptcy

21    Courts to implement the procedural and substantive changes to the Bankruptcy Code made by the

22    SBRA.  Pursuant to the First Amended General Order 20-01 entered by this Court on February 14,

23    2020, the Interim Rules were adopted in their entirety.

24

25    _____

        [6] Based on White Winston's review of the Debtor's Balance Sheet as of November 30,
26    2019, approximately $2,432,524.63 of the liabilities reported in the Balance Sheet appear to relate
      to debts owed to the Debtor's insiders, leaving non-insider liabilities in the amount of
27    $12,845,487.75.

28

Interim Rule 1020 provides:

> "(a) **Small Business Debtor Designation.** In a voluntary chapter 11 case, the debtor shall state in the petition whether the debtor is a small business debtor and, if so, whether the debtor elects to have subchapter V of chapter 11 apply. […] The status of the case as a small business case or a case under subchapter V of chapter 11 shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect.
>
> (b) **Objecting to Designation.** The United States trustee or a party in interest may file an objection to the debtor's statement under subdivision (a) no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later.
>
> (c) **Procedure for Objection or Determination.** Any objection or request for a determination under this rule shall be governed by Rule 9014 and served on: the debtor; the debtor's attorney; the United States trustee; the trustee; the creditors included on the list filed under Rule 1007(d) or, if a committee has been appointed under § 1102(a)(3), the committee or its authorized agent and any other entity as the court directs."

Interim Amendment to Fed. R. Bankr. P. 1020.

The Debtor stated in its Petition that it is a "small business debtor" and has elected to proceed under Subchapter V of Chapter 11. Under Interim Rule 1020(a), the status of the Debtor's case will remain in accordance with the Debtor's statement in its Petition "unless and until the court enters an order finding that the debtor's statement is incorrect."

White Winston brings this Motion, in accordance with Interim Rule 1020(b)-(c), to object to the Debtor's "small business debtor" designation in the Petition and the Debtor's election to proceed under Subchapter V.

To qualify as a "small business debtor" and to proceed under Subchapter V, the Debtor must have "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition…in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders)." *See,* 11 U.S.C § 101(51D) (as modified by the CARES Act) and § 1182(1). However, based upon information provided by the Debtor itself (and included in pleadings filed with this Court), the total amount of the Debtor's prepetition non-insider debt totals at least **$19,974,943.30**, which is well in excess of the $7,500,000 debt limit set forth in 11 U.S.C § 101(51D). The Debtor therefore does not qualify as a "small business debtor" and cannot proceed under Subchapter V.

The Debtor has suggested that disputed debts should be deducted from the calculation of the Debtor's total debt for qualification purposes under 11 U.S.C § 101(51D). However, this suggestion is directly contrary to the plain language of 11 U.S.C § 101(51D). As the Supreme Court of the United States has stated, "[t]he plain text of the Bankruptcy Code begins and ends our analysis." *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S.Ct. 1938, 1946, L.Ed.2d 298 (2016); *see also*, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (resolving whether Puerto Rico is a "State" for purposes of the pre-emption provision begins "with the language of the statute itself," and that "is also where the inquiry should end," for "the statute's language is plain."); *see also*, *Chamber of Commerce of United States of America v. Whiting*, 563 U.S. 582, 594, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011) (the court should "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent").

While Section 101(51D) provides for "noncontingent" and "liquidated" debts to be counted for determining the total amount of a debtor's debt, it does not provide for only "undisputed" debts to be counted in such determination. Congress has expressly excluded disputed debts elsewhere in the Bankruptcy Code. *See,* 11 U.S.C. § 303(b)(1) ("An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to

1  liability or amount…if such noncontingent, undisputed claims aggregate at least $16,750 more

2  than the value of any lien on property of the debtor securing such claims held by the holders of

3  such claims").  Had it been the intent of Congress to exclude disputed debts from the calculation

4  of a debtor's total debt for purposes of qualifying as a "small business debtor" under 11 U.S.C. §

5  101(51D), Congress would have stated so explicitly.  Based on the foregoing, White Winston

6  submits that disputed debts can and should be counted for purposes of determining whether the

7  Debtor falls within the debt limit prescribed by 11 U.S.C § 101(51D).[7]

8        Even if the Debtor is correct that disputed claims should be deducted from the calculation

9  of a debtor's total debt (which White Winston contends is not correct), the Debtor still has

10 undisputed debts totaling well over the $7,500,000 debt limit set forth in 11 U.S.C § 101(51D).

11 As noted above, even if the so-called "disputed" debt owed by the Debtor to White Winston (in

12 the sum of $9,490,718.30)[8] is deducted in its entirety, the total amount of the Debtor's

13 noncontingent liquidated secured and unsecured debt (excluding insider debt) is **$10,484,225.00**.

14 Going one step further, even if the disputed judgment debt owed by the Debtor to Ultimate

15 Funding Solutions (in the sum of $69,996.56), the PPP loan debt owed by the Debtor to

16 Mechanics Bank (in the sum of $944,950.00), and the Economic Injury Disaster Loan (EIDL) debt

17 owed by the Debtor to the U.S. Small Business Administration (in the sum of $150,000.00) are

18 _____

19      [7] While the Bankruptcy Code does not indicate how (or at what dollar amount) disputed
    claims should be calculated for purposes of determining a debtor's aggregate debt amount, at least
20  the undisputed portion of a disputed claim will presumably be counted for such purposes.

21      [8] Although the Debtor has stated that it disputes the claim held by White Winston, the
    Debtor expressly acknowledged and confirmed that White Winston was owed the sum of
22  $9,526,362.81 as of April 6, 2020 in that certain *Amended and Restated Confirmation, Standstill
    and Accommodation Agreement* dated as of April 7, 2020, a true and correct copy of which is
23  attached as **Exhibit E** to the Mahoney Declaration annexed hereto.  Section 1.1 of the foregoing
    agreement states "[t]he Obligors [including the Debtor] confirm that the outstanding balance of the
24  Loan as of April 6, 2020, is Nine Million Five Hundred Twenty-Six Thousand Three Hundred
    Sixty-Two and 81/100ths Dollars ($9,526,362.81), which included interest that has accrued
25  through such date, and all incurred costs, fees and expenses.  The Obligors further agree that the
    foregoing sum, together with continually accruing interest and any related costs, fees and
26  expenses, as applicable, are, as of the date hereof, owing without claim, counterclaim, right of
    recoupment, defense or set-off of any kind or of any nature whatsoever."
27

28

1    deducted, the total remaining amount of the Debtor's noncontingent liquidated non-insider debt is

2    **$9,319,278.44**.

3    Accordingly, under any scenario, based on the financial information provided **by the**

4    **Debtor**, the total amount of the Debtor's aggregate non-contingent liquidated non-insider debts far

5    exceeds the $7,500,000 debt limit prescribed by 11 U.S.C § 101(51D).  The Debtor therefore does

6    not qualify as a "small business debtor" and cannot proceed under Subchapter V.

7    **IV.**

8    **CONCLUSION**

9    Based on the foregoing, White Winston respectfully requests that the Court enter an order:

10   (1)    granting the Motion;

11   (2)    sustaining White Winston's objection to, and striking, the small business debtor

12   designation and Subchapter V election made by the Debtor in the Debtor's chapter 11 voluntary

13   petition; and

14   (3)    granting such other and further relief as the Court deems just and proper under the

15   circumstances of the Debtor's bankruptcy case.

16   Dated: October 28, 2020                    WHITE WINSTON SELECT ASSET FUNDS, LLC

17                                              _____*/s/ Juliet Y. Oh*_____
                                               EVE H. KARASIK
18                                             JULIET Y. OH
19                                             LEVENE, NEALE, BENDER, YOO
                                                   & BRILL L.L.P.
20
                                               -and-
21
22                                             Jeffrey D. Sternklar (Pro Hac Vice)
                                               JEFFREY D. STERNKLAR LLC
23
24                                             Counsel for Secured Creditor,
                                               White Winston Select Asset Funds, LLC
25

26

27

28

13

## DECLARATION OF ROBERT P. MAHONEY

I, Robert P. Mahoney, hereby declare as follows:

1.    I am over 21 years of age.  I have personal knowledge of all statements I make in this declaration, and they are all true and correct, except for those statements made upon information and belief, and as to those statements, I believe them to be true and correct.

2.    I am a Partner in White Winston Select Asset Funds, LLC ("White Winston") where I also serve as its Chief Financial Officer.  I have extensive experience in underwriting and managing loans and investments in businesses, and in financial reporting and administration. Prior to joining White Winston, I was the managing member of Hillcrest Capital Partners, L.P. which was originally organized in 2006, and prior to that, I was a managing member of Middlebury Venture Partners, L.P. originally organized in 1995.  Both of the Hillcrest and Middlebury funds were comprised of investment entities that focused on making investments in expansion and later-stage companies.  Prior to my involvement as a principal in the Middlebury fund, I was employed for twelve years by The Continental Group, Inc., a Fortune 50 company, where my last position was General Manager of Development and Real Estate. I hold a Bachelor of Arts degree with a major in Mathematics from The University of Rochester, and a Masters of Business Administration, with a concentration in Finance, from New York University.

3.    I submit this declaration in support of that certain *Notice Of Motion And Motion To Strike Small Business Debtor Designation And Subchapter V Election By Debtor In Chapter 11 Petition* (the "Motion") filed by White Winston, to which Motion this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.    Pursuant to the Motion, White Winston objects to, and seeks the entry of a Court order striking, the small business debtor designation and Subchapter V election made by the Debtor in the Debtor's chapter 11 voluntary petition (the "Petition") filed on October 5, 2020 (the "Petition Date").

5.    The Petition reflects that the Debtor has between 200-999 creditors and estimated liabilities totaling between $1,000,001-10,000,000.

6.      I have prepared a summary of the Debtor's debts as of the Petition Date using information provided by the Debtor in pleadings filed in the Debtor's bankruptcy case and/or information provided directly by the Debtor to White Winston.  The foregoing summary (the "Debt Summary") is attached as **Exhibit A** hereto.

7.      On October 12, 2020, the Debtor submitted its *Statement Re Reporting Per Interim Order Approving Debtor's Request For Approval Of Limited Emergency Postpetition DIP Financing To Fund Noninsider Payroll Due October 9, 2020* [Doc. No. 64] (the "October 12 Reporting").  Included in the October 12 Reporting, at pages 223-289, is a list of "Unpaid Bills as of October 5, 2020" totaling $5,825,216.68 (the "FMB Prepetition Debt List").   The FMB Prepetition Debt List does not include the secured debts owed by the Debtor to Montecito Bank & Trust ("MBT") and White Winston.

8.      When the Debtor's insider debts are deducted from the FMB Prepetition Debt List, the adjusted total amount of the Debtor's pre-petition non-insider unsecured debt is **$5,156,669.64,** as follows:

| | | |
|---|---|---|
| Total debt reflected in FMB Prepetition Debt List | *See* Doc. No. 64, p. 239 | $5,825,216.68 |
| Figueroa Mountain Brewing Co. Westlake Village | *See* Doc. No. 64, p. 247 | ($24,480.17) |
| Fig Mountain Productions | *See* Doc. No. 64, pp. 247-48 | ($69,382.30) |
| FME Arroyo Grande (Avenida Caballo) | *See* Doc. No. 64, p. 251 | ($368,959.32) |
| Jaime Dietenhofer | *See* Doc. No. 64, pp. 256-57 | ($118,416.71) |
| Judie Dietenhofer | *See* Doc. No. 64, pp. 258-59 | ($87,308.54) |
| **Adjusted debt total:** | | **$5,156,669.64** |

9.      The FMB Prepetition Debt List excludes certain debts owed by the Debtor, including, without limitation, the secured debts owed by the Debtor to MBT and White Winston. Those excluded debts that White Winston is aware of are set forth in the table below.  When the total amount of these excluded debts are added to the total amount of the Debtor's prepetition non-insider debt from paragraph 8 above, the Debtor's non-insider debt actually totals at least **$19,974,943.30.**

| | | |
|---|---|---|
| Adjusted debt total from FMB Prepetition Debt List | *See* paragraph 5 above | $5,156,669.64 |
| Montecito Bank & Trust (Loan Nos. 6227896 & 6228244) | *See* FMB Prepetition Debt List, Doc. No. 4, p. 263 (no loan balances listed), but compare Doc. No. 64, pp. 5-6 (payoff statements for loans) | $3,421,263.93 (unreported amount) |
| White Winston Select Asset Funds, LLC | *See* payoff statement attached as **Exhibit B** hereto | $9,490,718.30 |
| Allan Texeira (loan) | *See* FMB Prepetition Debt List, Doc. No. 64, p. 225 ($19,932.54 listed), but compare Petition, Doc. No. 1, p. 10 ($300,000 listed, as undisputed) | $280,067.46 (underreported amount) |
| California State Board of Equalization (sales taxes) | *See* FMB Prepetition Debt List, Doc No. 64, p. 282 ($84,532.53 sales taxes listed), but compare Doc. No. 64, p. 222 ($396,477.12 sales taxes listed) | $311,944.59 (underreported amount) |
| Mechanics Bank | *See* FMB Prepetition Debt List, Doc. No. 64, p. 262 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($944,950.00 listed, as undisputed) | $944,950.00 (unreported amount) |
| Ultimate Funding Solutions | *See* FMB Prepetition Debt List, Doc. No. 64, p. 286 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($69,996.56 listed, as disputed) | $69,996.56 (unreported amount) |
| Unique Funding Solutions LLC | *See* FMB Prepetition Debt List, Doc. No. 64, p. 285 (no debt listed), but compare judgment entered against Debtor and others on 8/15/2019 attached as **Exhibit C** hereto | $149,332.82 (unreported amount) |
| U.S. Small Business Administration | *See* FMB Prepetition Debt List, Doc. No. 64, p. 286 (no debt listed), but compare Petition, Doc. No. 1, p. 11 ($150,000.00 listed, as undisputed) | $150,000.00 (unreported amount) |
| **Total debt amount:** | | **$19,974,943.30** |

10.    Even if the claim asserted by White Winston, in the sum of $9,490,718.30, is deducted in its entirety from the total amount of the Debtor's non-insider debt calculated above (*i.e.*, $19,974,943.30), the Debtor still has total non-insider debt of at least **$10,484,225.00**.  This total debt amount is consistent with the total debt amounts reported by the Debtor in the past, including:

a.    the total debt amount reported by the Debtor as of December 31, 2018, in the sum of $12,374,908, which was prior to White Winston's involvement with the Debtor (*see*, Debtor's 2018 federal income tax return, Doc. No. 1, p. 100); and

b.    the total debt amount reported by the Debtor as of November 30, 2019, in the sum of $15,278,012.38, as reflected in the Balance Sheet prepared by the Debtor and provided to White Winston, of which approximately $12,845,487.75 appear to relate to non-insider debt[9] (*see* Debtor's Balance Sheet as November 30, 2019 attached as **Exhibit D** hereto).

11.    Going one step further, even if the disputed judgment debt owed by the Debtor to Ultimate Funding Solutions (in the sum of $69,996.56), the PPP loan debt owed by the Debtor to Mechanics Bank (in the sum of $944,950.00), and the Economic Injury Disaster Loan (EIDL) debt owed by the Debtor to the U.S. Small Business Administration (in the sum of $150,000.00) are deducted, the total remaining amount of the Debtor's noncontingent liquidated non-insider debt is **$9,319,278.44**.

/ / /

/ / /

/ / /

/ / /

---

[9]    Based on my review of the Debtor's Balance Sheet as of November 30, 2019, approximately $2,432,524.63 of the liabilities reported in the Balance Sheet appear to relate to debts owed to the Debtor's insiders, leaving non-insider liabilities in the amount of $12,845,487.75.

12.    The Debtor expressly acknowledged and confirmed that White Winston was owed the sum of $9,526,362.81 as of April 6, 2020 in that certain *Amended and Restated Confirmation, Standstill and Accommodation Agreement* dated as of April 7, 2020, a true and correct copy of which is attached as **Exhibit E** hereto.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of October, 2020, at Shelton, Connecticut.


ROBERT P. MAHONEY

18

**DECLARATION OF JULIET Y. OH**

I, Juliet Y. Oh, hereby declare as follows:

1.       I am over 21 years of age.  I have personal knowledge of all statements I make in this declaration, and they are all true and correct, except for those statements made upon information and belief, and as to those statements, I believe them to be true and correct.

2.       I am a partner of Levene, Neale, Bender, Yoo & Brill L.L.P., which is bankruptcy counsel to White Winston Select Asset Funds, LLC ("White Winston") in the chapter 11 bankruptcy case of Figueroa Mountain Brewing, LLC, the debtor and debtor-in-possession herein (the "Debtor").  I am an attorney licensed to practice law in the State of California, in the United States District Court and the Bankruptcy Courts for the Southern, Central, Northern and Eastern Districts of California, and in the United States Court of Appeals for the Ninth Circuit.

3.       I submit this declaration in support of that certain *Notice Of Motion And Motion To Strike Small Business Debtor Designation And Subchapter V Election By Debtor In Chapter 11 Petition* (the "Motion") filed by White Winston, to which Motion this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.       On October 21, 2020, I sent a letter to Christopher Prince and Matthew Lesnick, of Lesnick Prince & Pappas LLP, proposed counsel for the Debtor, which raised the issues described in the Motion, provided the Debtor with White Winston's detailed analysis of the Debtor's aggregate noncontingent liquidated debts, and requested that the Debtor file an amendment to its voluntary petition (the "Petition") by October 26, 2020 to eliminate its designation as a "small business debtor" and election to proceed under Subchapter V.  A true and correct copy of the foregoing letter is attached as **Exhibit F** hereto.  As reflected in such letter, I advised the Debtor and its counsel that White Winston would proceed with the filing of a formal motion if the Debtor did not file an amendment to the Petition as requested.

5.       Although I have corresponded with counsel for the Debtor in an attempt to resolve the issues raised in the Motion without seeking the intervention of this Court, the Debtor and its counsel have declined to address the substance of the issues raised by White Winston to date, stating only that the Debtor disputes White Winston's conclusions and that White Winston should wait until the Debtor has filed its bankruptcy schedules (which I am advised are due on November 9, 2020) and the parties have an opportunity to meet and confer thereafter.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of October, 2020, at Los Angeles, California.s

_____
JULIET Y. OH

# EXHIBIT "A"

## FIGUEROA MOUNTAIN BREWING, LLC DIP

### Case #9:20-bk-11208-MB

### TOTAL LIABILITIES

| CREDITOR | NATURE OF CLAIM | Claim Amount | Documentation of Claim Amount |
|---|---|---|---|
| Trade Creditors/Unpaid Bills | Accounts Payable | $5,825,216.68 | Debtor's Submitted Doc 64, Pages 223-290 |
| LESS: Obligations to Insiders | | | |
| Figueroa Mountain Brewing Co. Westlake Village | | ($24,480.17) | Debtor's Submitted Doc 64, Page 247 |
| Figueroa Mountain Productions | | ($69,382.30) | Debtor's Submitted Doc 64, Pages 247-248 |
| FME Arroyo Grande (Avenida Caballo) | | ($368,959.32) | Debtor's Submitted Doc 64, Pages 251 |
| James Dietenhofer | | ($118,416.71) | Debtor's Submitted Doc 64, Pages 256-257 |
| Judie Dietenhofer | | ($87,308.54) | Debtor's Submitted Doc 64, Pages 258-259 |
| Net Non-Insider Accounts Payable | | ($668,547.04) | |
| PLUS: Unreported or Underreported Debts | | | |
| Montecito Bank | Loan #6227896 | $3,135,523.33 | Debtor's Submitted Doc 64, Page 5 |
| | Loan #6228244 | $285,740.60 | Debtor's Submitted Doc 64, Page 6 |
| Total Montecito Bank debt | | $3,421,263.93 | |
| White Winston Select Asset Funds, LLC | Note dated 7/26/19 | $9,490,718.30 | White Winston Payoff Stmt. as of 10/5/20 |
| Allan Teixeira (adjustment for underreported amount) | Loan | $280,067.46 | Debtor's Submitted Doc 64, Page 225 ($19,932.54) vs. Doc 1, Page 10 ($300,000, undisputed) |
| CA State Board of Equalization (adjustment for underreported amount) | Sales Taxes | $311,944.59 | Debtor's Submitted Doc 64, Page 282 ($84,532.53) vs. Doc 64, Page 222 ($396,477.12) |
| Mechanics Bank | Payroll Protection Plan Loan (PPP) | $944,950.00 | Debtor's Submitted Doc 64, Page 262 ($0) vs. Doc 1, Page 11 ($944,950.00, undisputed) |
| Ultimate Funding Solutions | Loan | $69,996.56 | Debtor's Submitte Doc 64, Page 286 ($0) vs. Doc 1, Page 11 ($69,996.56 listed, disputed) |
| Unique Funding Solutions LLC | Judgment | $149,332.82 | Debtor's Submitted Doc 64, Page 285 ($0) vs. Judgment by Confession entered 8/15/19 (NY State) ($149,332.82) |
| U.S. Small Business Administration | Economic Injury Disaster Loan (EIDL) | $150,000.00 | Debtor's Submitted Doc 64, Page 286 ($0) vs. Doc 1, Page 11 ($150,000.00, undisputed) |
| **TOTAL** | | **$19,974,943.30** | |

# EXHIBIT "B"



## PAYOFF SHEET
*As of October 5, 2020*

BORROWER:        FIGUEROA MOUNTAIN BREWING, LLC

LENDER:          WHITE WINSTON SELECT ASSET FUNDS, LLC

SECURITIES:      SECURED PROMISSORY NOTE DATED JULY 26, 2019 AS MODIFIED BY
                 LOAN MODIFICATION AGREEMENT DATED NOV. 12, 2019, AND BY
                 SECOND LOAN MODIFICATION AGMT. DATED JAN. 16, 2020, AND BY
                 THIRD LOAN MODIFICATION AGMT. DATED APRIL 6, 2020

---

PRINCIPAL BALANCE                                   $9,465,740.58

ACCRUED AND UNPAID INTEREST THROUGH:
     October 5, 2020                                $24,977.72

ACCRUED FEES AND REIMBURSEMENTS DUE:                $-0-

LEGAL & PROF. FEES INCURRED:                        $-0-

                        AMOUNT DUE                  $9,490,718.30

                Per Diem:   $4,995.81

All figures are given upon the condition that they will not be considered an estoppel against White Winston
Select Asset Funds, LLC.   Figures are void after ten (10) days from the date of Payoff Sheet.

**ALL FUNDS MUST BE MADE PAYABLE BY WIRE,**
**BANK CHECK OR CERTIFIED FUNDS TO LENDER**

# EXHIBIT "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF STEUBEN

UNIQUE FUNDING SOLUTIONS LLC ,

Index No.:  *E2019-1174CV*

Plaintiff,

vs.

**JUDGMENT BY CONFESSION**

FIGUEROA MOUNTAIN BREWING, LLC
AND FIGUEROA MOUNTAIN MUG CLUB
LLC AND 71-73 INDUSTRIAL WAY LLC
AND FIGUEROA MOUNTAIN
PRODUCTION LLC AND AGUA SANTA
BREWING LLC AND LIQUAMENTUM LLC
AND AVENIDA CABALLO LLC AND
FIGUEROA MOUNTAIN DISTRIBUTION
LLC AND FIGUEROA MTN ENT ARROYO
GRANDE LLC  AND JAIME GRAY
DIETENHOFER ,

Defendants

| | |
|---|---|
| Amount Confessed: | $195,750.00 |
| Less Payments Received: | $83,638.85 |
| **Amount Due and Owing:** | **$112,111.15** |
| Interest at 16%: | $0.00 |
| Attorney's Fees confessed: | $36,996.67 |
| Costs by Statute (CPLR 3218[b]): | $15.00 |
| Filing Fee (CPLR 8018[a]): | $210.00 |
| Total Costs and Disbursements: | $225.00 |
| **Total:** | **$149,332.82** |

<u>ATTORNEY'S AFFIRMATION</u>

STATE OF NEW YORK
COUNTY OF NASSAU
    The undersigned, an attorney at law of the State of New York, affirms that he is the
attorney of record for the Plaintiff UNIQUE FUNDING SOLUTIONS LLC  herein, and states
that the disbursements above specified are correct and true and have been or will necessarily be

INDEX NO. E2019-1174CV
RECEIVED NYSCEF: 08/15/2019

made or incurred herein and are reasonable in amount and affirms this statement to be true under
the penalties of perjury.

    Dated: 8/14/2019

*Joe Lieberman*

Joe Lieberman, Esq.
PO Box 356
Cedarhurst, New York 11516
Tel: (718) 316-6893

**ON FILING** the foregoing Affidavit of Confession of Judgment made by Defendants herein, sworn to on 5/30/2019;

**NOW, ON MOTION OF** Joe Lieberman, Esq., attorney for Plaintiff it is

**ADJUDGED**, that Plaintiff UNIQUE FUNDING SOLUTIONS LLC having an address at 71 S CENTRAL AVENUE, VALLEY STREAM, NY 11580, have judgment and do recover of Defendant FIGUEROA MOUNTAIN BREWING, LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN MUG CLUB LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND 71-73 INDUSTRIAL WAY LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN PRODUCTION LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND AGUA SANTA BREWING LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND LIQUAMENTUM LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND AVENIDA CABALLO LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN DISTRIBUTION LLC located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MTN ENT ARROYO GRANDE LLC , having an address at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 and Defendant JAIME GRAY DIETENHOFER , having an address at 2495 SANTA YNEZ ST, BUELLTON, CA 93427 jointly and severally, the sum of $112,111.15 plus interest at sixteen percent (16%) as calculated by the Clerk in the amount of $0.00, plus costs and disbursements as taxed by the Clerk in the amount of $225.00, plus attorneys' fees in the amount of $36,996.67, for a total sum of $149,332.82; and that

Plaintiff UNIQUE FUNDING SOLUTIONS LLC shall have execution thereof.

_Judith M. Hunter_
CLERK

Judgment entered the ___15th___ day of ___August___, 2019

Index No.             Year   RJI No.         Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF STEUBEN

---

UNIQUE FUNDING SOLUTIONS LLC ,

                                               Plaintiff,

                -against-

FIGUEROA MOUNTAIN BREWING, LLC AND FIGUEROA MOUNTAIN MUG
CLUB LLC AND 71-73 INDUSTRIAL WAY LLC AND FIGUEROA MOUNTAIN
PRODUCTION LLC AND AGUA SANTA BREWING LLC AND LIQUAMENTUM LLC
AND AVENIDA CABALLO LLC AND FIGUEROA MOUNTAIN DISTRIBUTION LLC
AND FIGUEROA MTN ENT ARROYO GRANDE LLC  AND
JAIME GRAY DIETENHOFER

                                           Defendants.

---

### JUDGMENT

---

### JOE LIEBERMAN, ESQ.
*Attorney for Plaintiff*

*Address, Telephone*
**PO BOX 356**
**CEDARHURST, NEW YORK 11516**
**PHONE: (718) 316-6893**
**FAX: (516) 308-9383**

---

Service of a copy of the within       is hereby admitted.

Dated,

                                           Attorney(s) for

---

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order       of which the within is a true copy will be presented for

INDEX NO. E2019-1174CV

Main Document     Page 32 of 71

Case 19-20905-MB    Doc 108    Filed 10/28/20    Entered 10/28/20 15:38:58    Desc

RECEIVED NYSCEF: 08/15/2019

settlement to the HON,          one of the judges
of the within named court, at               on        at
Dated,                                                          Yours, etc.
                                                               Attorney(s) for

# EXHIBIT "D"

# Figueroa Mountain Brewing, LLC
## Balance Sheet
### As of November 30, 2019

|  | Total |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Bank Accounts** | |
| 11050 Cash on Hand | 5,363.66 |
| 11100 Cash on Hand -SB | 2,158.12 |
| 11102 Cash on Hand -BUEL | 2,143.52 |
| 11105 Cash on Hand - Santa Maria | 1,151.10 |
| 11106 Cash on Hand -LO | 1,075.44 |
| 11180 Rabo Bank Account | 8,952.16 |
| 11185 Boston Checking | -176,784.77 |
| 11190 Pacific Premier Bank | 43.61 |
| 11195 Boston Lockbox | -914,352.68 |
| 11250 Merchandise Bank Acct 3172 | 1,151.93 |
| **Total Bank Accounts** | **-$ 1,069,097.91** |
| **Accounts Receivable** | |
| 12000 Accounts Receivable | 849,835.96 |
| 12080 Accounts Rec. Intercompany Distribution- Warehouse | 14,884.20 |
| 12090 Accounts Rec. Intercompany 71-73 | 176,570.76 |
| 12100 Accounts Rec. Intercompany -Liquamentum | 7,457.90 |
| 12110 Accounts Rec. Intercompany -Mug Club | -212,432.74 |
| 12140 Accounts Rec. Intercompany -Avenida Caballo | -34,613.17 |
| 12150 Accounts Rec. Intercompany -Westlake | -49,546.90 |
| 12160 Accounts Rec. Intercompany -Terra Development | 270,026.19 |
| 12170 Accounts Receivable-Agua Santa | 3,431.62 |
| 12180 Accounts Receivable Figueroa Mountain Productions | 1,600.00 |
| 13115 Note Receivable - FMEWLV, LLC (from FMESM, LLC) | 40,534.20 |
| **Total Accounts Receivable** | **$ 1,067,748.02** |
| **Other Current Assets** | |
| 12700 Prepaid Expenses | 8,219.51 |
| 12710 Prepaid Insurance | 32,247.79 |
| 12720 Prepaid Federal Income Tax Exp. | 11,790.00 |
| 12750 Prepaid Rent | 17,531.82 |
| 12760 Prepaid Income Tax Refundable | 800.00 |
| 13000 Inventory - Finished Goods | -899,673.50 |
| 13001 Inventory - (SM Finished Goods) | 1,863.35 |
| 13002 Inventory - (BU Finished Goods) | 2,915.52 |
| 13004 Inventory (SB Finished Goods) | 2,813.94 |
| 13006 Inventory - (LO Finished Goods) | 1,306.77 |
| 13010 Inventory - Raw Materials | 424,484.28 |
| 13020 Inventory - Prepaid Hops | 83,319.30 |
| 13030 Inventory - Packaging | 398,096.35 |

| | | |
|---|---|---|
| **13040 Inventory - Retail Merchandise** | | 3,447.82 |
| **13060 Inventory - Restaurant Food & Bev (Buellton)** | | 4,490.88 |
| **13061 Inventory - Restaurant Food & Bev (Santa Maria)** | | 6,197.38 |
| **13110 WIP - Wort** | | 159,272.70 |
| **13140 WIP- Bright Beer** | | 17,547.72 |
| **13500 Inventory - Labor (BREW)** | | 82,231.06 |
| **13501 Inventory - Labor (Cellar)** | | 128,146.66 |
| **13530 PR Taxes/Exp (BREW)** | | 7,930.48 |
| **13531 PR Taxes/Exp (Cellar)** | | 10,736.20 |
| **13533 Vacation Pay (Cellar)** | | 6,749.85 |
| **13550 Salary OT (BREW)** | | 3,097.73 |
| **13551 Salary OT (Cellar)** | | 5,026.73 |
| **13560 Health Insurance (BREW)** | | 2,688.96 |
| **13561 Health Insurance (Cellar)** | | 6,534.16 |
| **13570 Work Comp (BREW)** | | 667.00 |
| **13571 Work Comp (Cellar)** | | 642.00 |
| **Inventory Asset** | | 150,968.40 |
| **Total Other Current Assets** | **$** | **682,090.86** |
| **Total Current Assets** | **$** | **680,740.97** |
| **Fixed Assets** | | |
| **15000 Leasehold Improvements** | | 1,566,679.85 |
| **15047 L/H Improvements - 47 Industrial** | | 39,846.24 |
| **15073 L/H Improvements - 73 Industrial** | | 38,538.59 |
| **15150 Furniture & Equipment -Events** | | 3,935.80 |
| **15200 Tasting Room Equipment** | | 305,970.42 |
| **15250 Rest Systems / Credit Card -LO** | | 2,707.00 |
| **15400 Office Equipment & Furniture** | | 110,288.12 |
| **15500 Computer/Software/Phone** | | 13,568.43 |
| **15600 Brewing Equipment** | | 1,958,588.11 |
| **15601 BrauKon Brewhouse** | | 2,136,650.31 |
| **15602 Brite Tanks** | | 84,716.57 |
| **15603 Bottling Line Equipment** | | 730,296.13 |
| **15604 Canning Line Equipment** | | 798,227.84 |
| **15605 Process Utilities** | | 749,086.80 |
| **15606 Silos/Grain Handling** | | 242,861.58 |
| **15620 Cellar Tanks -Leased FMP** | | 426,500.00 |
| **15750 Kegs** | | 10,989.35 |
| **15850 Vehicles -CORP** | | 74,487.40 |
| **15860 Vehicles -SALES** | | 87,731.03 |
| **15870 Capitalized Lease -Forklift** | | 27,730.44 |
| **15900 Website** | | 50,265.00 |
| **15950 Figueroa Mountain Signs** | | 91,993.91 |
| **16190 Kitchen Equipment** | | 96,638.93 |
| **16200 Kitchen -BUEL** | | 363,762.20 |
| **16250 Restaurant Equipment (Santa Maria)** | | 199,928.43 |
| **16300 Tank Project** | | 352,953.00 |
| **16450 75 Industrial Way** | | 61,753.15 |

| | | |
|---|---|---:|
| **16500 Outside Tanks  1** | | 927,687.23 |
| **16550 CIP -Tankfarm 2** | | 603,910.07 |
| **16750 CIP -Adjustment** | | 30,329.53 |
| **16800 CIP - Bottle Filler Remodel** | | 81,266.46 |
| **18200 Accum Amort- L/H Improvements** | | -1,071,513.46 |
| **18250 Accum Deprec- Furniture and Equipment** | | -10,215.47 |
| **18300 Accum Deprec- Tasting Room Equipment** | | -558,143.81 |
| **18400 Accum Deprec- Store Furniture** | | -25,669.78 |
| **18450 Accum Deprec- Office Equipment & Furniture** | | -94,182.93 |
| **18550 Accum Deprec- Brewing Equipment** | | -1,435,218.05 |
| **18700 Accum Deprec- Kegs** | | -14,180.58 |
| **18750 Accum Deprec- Vehicles** | | -149,808.93 |
| **18850 Accum Amort- Design-Logo/Trademark** | | -20,261.70 |
| **18900 Accum Deprec- Brewery Startup Costs** | | -26,950.79 |
| **Total Fixed Assets** | $ | **8,863,742.42** |
| **Other Assets** | | |
| **12800 Secrutiy Deposits** | | 19,863.00 |
| **17050 Deposit - CIP Equipment** | | 747,754.13 |
| **17100 Security Deposit PG&E** | | 29,749.00 |
| **17200 Security Deposit -So. Edison** | | 21,324.00 |
| **17300 Security Deposit Rent** | | 48,790.00 |
| **17400 Security Deposit -Design Service Retainer** | | 6,500.80 |
| **17450 Design- Logo/ Trademark** | | 448,804.21 |
| **17500 Startup Costs** | | 61,471.00 |
| **17600 Liquor License** | | 3,055.00 |
| **17700 License & Permits** | | 11,707.00 |
| **17800 Loans Fees** | | 51,171.00 |
| **Total Other Assets** | $ | **1,450,189.14** |
| **TOTAL ASSETS** | $ | **10,994,672.53** |
| **LIABILITIES AND EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Accounts Payable** | | |
| **22050 Accounts Payable** | | 4,596,810.71 |
| **22200 Credit Card Payable -Chase** | | 21,824.68 |
| **Total Accounts Payable** | $ | **4,618,635.39** |
| **Credit Cards** | | |
| **22150 AMEX - Taylor Judkins** | | 2,056,593.87 |
| **Total Credit Cards** | $ | **2,056,593.87** |
| **Other Current Liabilities** | | |
| **22041 Accrued Reimbursable Expenses** | | 17,658.17 |
| **22071 Accrued Accounts Payable (Active)** | | 71,198.85 |
| **22100 Accrued Interest -Jim** | | 25,322.83 |
| **22140 Accrued Taxes** | | -23,418.65 |
| **22170 Due to/(from) FME Westlake VIllage, LLC.** | | -180,314.56 |
| **22180 Accrued Rent - Mr. Jim** | | 15,316.60 |
| **22250 Payroll Tax Payables** | | 759.61 |

| | | |
|---|---|---|
| 22400 MB&T RCR LOC (Overdraft Protection) | | 8,474.52 |
| 22425 Due to/from Avenida Caballo LLC | | -142,529.66 |
| 22426 Due to/(from) FME Santa Maria, LLC. | | 42,151.15 |
| 22500 Wages Payable | | 68,684.71 |
| 22510 Accrued Payroll Taxes | | 1,080.08 |
| 22550 Wages Payable (Vacation) | | 73,797.68 |
| 22600 Sales Tax Payable | | 365,664.90 |
| 22800 CRV Liability | | 19,904.94 |
| 22827 Ultimate Funding Solutions | | 69,966.56 |
| 22828 Lendini | | 43,568.63 |
| 22829 CFG Merchant Solutions | | 44,718.05 |
| 22841 Discount on N/P - WW $750K Bridge Loan | | -75,000.00 |
| 22850 Deferred Revenues | | 36,103.50 |
| 22880 N/P - Ford Credit (Current) | | 16,616.40 |
| 22900 Lease Payable -FMP (Current) | | 94,565.39 |
| 22905 N/P - Longfellow Properties, LLC (Current) | | 200,000.00 |
| 22910 N/P - Hastings (Current) | | 9,956.98 |
| 22920 N/P - Sarloos (Current) | | 14,527.74 |
| 22930 N/P - Me-N-Eds (Current) | | 94,617.32 |
| 23000 Keg Deposits | | 1,489.00 |
| 23050 N/P - MB&T Kichen Current | | 9,895.99 |
| 23060 N/P - MB&T Tank Farm Current | | 378,457.87 |
| 23100 Security Deposits (Customers) | | 55,823.13 |
| 23200 Gift Cards Payable | | 26,499.18 |
| **Total Other Current Liabilities** | $ | **1,385,556.91** |
| **Total Current Liabilities** | $ | **8,060,786.17** |
| **Long-Term Liabilities** | | |
| 22090 Montecito Bank and Trust /CIP Tank Farm | | 2,444,831.75 |
| 22265 N/P - Longfellow Properties, LLC | | 484,211.00 |
| 22460 N/P - James Dietenhofer 10 yr Loan | | 50,000.00 |
| 23930 Notes Payable - Me-N-Eds | | 80,978.64 |
| 23940 Deferred Rent - Santa Maria | | 216,100.00 |
| 23950 Deferred Rent - Santa Barbara | | 44,921.00 |
| 23960 Deferred Rent - 71-73 | | 372,324.72 |
| 23970 Deferred Rent- Los Olivos | | 14,785.95 |
| 23980 Deferred Rent- 47 Industrial | | 26,581.29 |
| 23990 Deferred Rent - 45 Industrial | | 9,497.20 |
| 24050 Kitchen Loan -6228244-00 | | 265,740.86 |
| 24250 N/P - Sarloos | | 12,430.36 |
| 24300 Allan C. Teixeria | | 300,000.00 |
| 24400 James Dietenhofer- Dist | | 485,994.34 |
| 24600 Payable - Cabo Blanco Inc. | | 91,891.48 |
| 24650 Payable - Jaime Dietenhofer | | 215,272.03 |
| 24700 Payable - James Dietenhofer | | 321,320.18 |
| 24750 Payable - Judith Dietenhofer | | 65,000.00 |
| 24800 Payable - James Dietenhofer-MB&T | | 1,534,991.73 |
| 24850 Lease Payable - FMP | | 162,716.91 |

| | | |
|---|---|---:|
| **24880 N/P - Auto Current Offsett** | | -16,616.40 |
| **24930 Ford/Focus-2013 VIN # 90141** | | 962.08 |
| **24950 Ford/Focus-2013 VIN # 19549** | | 1,323.81 |
| **24960 Ford/Focus-2013 VIN # 63471 Chuck** | | 7,291.56 |
| **24970 Ford/Focus-2013 VIN # 38778 Mario Q** | | 6,444.09 |
| **24980 Ford/Escape-2018 VIN # 4567** | | 18,231.63 |
| **Total Long-Term Liabilities** | $ | **7,217,226.21** |
| **Total Liabilities** | $ | **15,278,012.38** |
| **Equity** | | |
| **30000 Opening Bal Equity** | | -979,818.69 |
| **30110 Capital Stock- Owner #1** | | 1,354,775.49 |
| **30120 Capital Stock- Owner #2** | | 1,548,786.19 |
| **30140 Capital Stock - DTJ** | | 4,600,000.00 |
| **30144 APIC - Avenida Caballo (via FMESM, LLC)** | | 152,978.48 |
| **30145 APIC - DTJ** | | 750,000.00 |
| **30146 APIC - Taylor Judkins** | | 200,000.00 |
| **30150 Capital Stock- American Rivera Investments, LLC** | | 250,000.00 |
| **30270 Distribution - Tera Development (via FMESM, LLC)** | | -240,847.07 |
| **30271 Distribution - Avenida Caballo (via FMESM, LLC)** | | -73,500.00 |
| **Retained Earnings** | | -8,568,674.23 |
| **Net Income** | | -3,277,040.02 |
| **Total Equity** | -$ | **4,283,339.85** |
| **TOTAL LIABILITIES AND EQUITY** | $ | **10,994,672.53** |

Monday, Dec 23, 2019 10:25:23 AM GMT-8 - Accrual Basis

**EXHIBIT "E"**

## AMENDED AND RESTATED
## CONFIRMATION, STANDSTILL AND ACCOMMODATION AGREEMENT

This Amended and Restated Confirmation, Standstill and Accommodation Agreement, dated as of April 7, 2020 (as amended, restated, supplemented or otherwise modified from time to time, this "*Agreement*"), is made by and among **JAMES C. DIETENHOFER AND JUDITH A DIETENHOFER LIVING TRUST** ("*Trust*"), Jaime Dietenhofer, an individual residing in the State of California ("*Jaime*" and with the Trust, the "*Guarantors*" and each a "*Guarantor*"), Judith Dietenhofer, an individual residing in the State of California ("Judith"), **FIGUEROA MOUNTAIN BREWING, LLC**, a California limited liability company ("*FMB*" and with the Guarantors, the "*Obligors*" and each an "*Obligor*," and with the Guarantors and Judith, the "*Borrower Parties*"), and **WHITE WINSTON SELECT ASSET FUNDS, LLC**, a Delaware limited liability company (the "*Lender*"). This Agreement amends and restates, in its entirety, that certain Confirmation, Standstill and Accommodation Agreement by and among the Borrower Parties and the Lender dated as of February 7, 2020.

### Background

A    FMB and the Lender entered into a Terms Letter dated July 16, 2019 (the "*LOI*") and setting forth certain binding and non-binding provisions pertaining to a prospective investment by the Lender in FMB's business. As of the date of this Agreement, FMB and the Lender have not completed the transactions contemplated by the LOI.

B    At FMB's request, the Lender has made a loan to FMB in the original principal amount of Seven Hundred Fifty Thousand and No/100 Dollars ($750,000.00) pursuant to a Loan Agreement, dated July 26, 2019 (the "*Loan Agreement*"), and evidenced by a Secured Promissory Note, dated July 26, 2019, made by FMB in favor of the Lender (the "*Note*"), each as amended by (i) that certain Loan Modification Agreement dated as of November 12, 2019, pursuant to which, *inter alia*, the principal amount of the loan was increased to Six Million Two Hundred Fifty Thousand and No/100 Dollars ($6,250,000.00), (ii) that certain Second Loan Modification Agreement, dated as of January 16, 2020, pursuant to which, *inter alia*, the principal amount of the loan was increased to Eight Million and No/100 Dollars ($8,000,000.00) (the "*Loan*"), and (iii) that certain Third Loan Modification Agreement, dated as of April 7, 2020, pursuant to which, *inter alia*, the principal amount of the loan was increased to Ten Million Five Hundred Thousand and No/100 Dollars ($10,500,000.00).

C    FMB's obligations with respect to the Loan and its other Obligations (defined below) to the Lender are secured by a lien and security interest (the "*Lender Lien*") in, to and on substantially all assets of FMB (the "*FMB Collateral*"), as evidenced by a Security Agreement between FMB and the Lender dated as of July 26, 2019.

D    Each Guarantor has guaranteed FMB's Obligations, as evidenced by a Guaranty between each Guarantor and the Lender, dated November 12, 2019 (each a "*Guaranty*" and collectively, the "*Guaranties*"). Each Guarantor's obligations under its respective Guaranty is secured by a pledge of such Guarantor's ownership interest in FMB (the "*Equity Collateral*"), as evidenced by a Securities Pledge Agreement, dated as of November 12, 2019 (each a "*Pledge Agreement*" and together, the "*Pledge Agreements*").

E    Jaime and Judith are the trustees of the Trust and Jaime is the beneficiary of the Trust.

F      On or about February 4, 2020, Judith advanced FMB the sum of Two Hundred Fifty Thousand and No/100 ($250,000.00) (the "*Initial Advance*") for FMB to use to pay and satisfy certain of its outstanding liabilities owed to governmental entities, which advance is not evidenced by a promissory note or other instrument and was made without prior notice to or consent of the Lender.

G      Between February 14, 2020 and March 12, 2020, Judith advanced FMB the aggregate sum of One Hundred Fifty Thousand and No/100 ($150,000.00) (collectively, the "*Second Advance*" and together with the Initial Advance, the "*Advances*") as follows: Eighty-Five Thousand and no/100 Dollars ($85,000.00) on February 14, 2020, Fifty Thousand and No/100 Dollars ($50,000.00) on February 26, 2020, and Fifteen Thousand and No/100th Dollars ($15,000.00) on March 12, 2020. The Second Advance was for FMB to use to to pay and satisfy certain of its outstanding liabilities owed to governmental entities and certain trade vendors, and for employee payroll obligations, and such Second Advance is not evidenced by a promissory note or other instrument and was made without prior notice to or consent of the Lender.

H      Judith has requested Lender agree to the terms of this Agreement to increase Judith's prospects of recovering the Advances from FMB in the event the assets of FMB are liquidated voluntarily or involuntarily.

I      Lender is prepared to agree to the terms and conditions of this Agreement to accommodate Judith, subject to and conditioned upon the execution, delivery and faithful performance by the Guarantors and FMB of their respective covenants, agreements and obligations hereunder.

N O W, T H E R E F O R E,

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## Section 1. __Confirmation, Ratification and Acknowledgment of the Guarantor__

1.1    <u>Confirmation of Existing Indebtedness</u>.  The Obligors confirm that the outstanding balance of the Loan as of April 6, 2020, is Nine Million Five Hundred Twenty-Six Thousand Three Hundred Sixty-Two and 81/100ths Dollars ($9,526,362.81), which included interest that has accrued through such date, and all incurred cost, fees and expenses. The Obligors further agree that the foregoing sum, together with continually accruing interest and any related costs, fees and expenses, as applicable, are, as of the date hereof, owing without claim, counterclaim, right of recoupment, defense or set-off of any kind or of any nature whatsoever.

1.2    <u>Ratification of Loan Documents</u>. The Obligors hereby confirm and reaffirm in all respects and without condition, all of the terms, covenants and conditions set forth in the Loan Documents (as defined below, and including, without limitation, the Guaranties), and hereby agree that all collateral, liens, security interests and pledges created pursuant thereto and/or referred to therein continue unimpaired and in full force and effect, and secure and shall continue to secure all of the Obligations. As used herein, "*Obligations*" means the indebtedness, liabilities and obligations of every kind, nature and description owing by the Obligors, or any of them to the Lender and/or its affiliates, including principal, interest, charges, fees, costs and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, whether arising under the documents executed and delivered by the parties with respect to the Loan (including, for the sake of clarity, the Guaranties) (the "*Loan Documents*"), this

2

Agreement or otherwise, whether now existing or hereafter arising, whether arising before, during or after the initial or any renewal term of the Loan, or after the commencement of any case with respect to either of the Guarantors (and with respect to the Trust, with respect to Judith) under the United States Bankruptcy Code or any similar statute (including the payment of interest and other amounts which would accrue and become due but for the commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in such case), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured, and however acquired by the Lender.

Section 2. **Standstill**

2.1    Standstill and Standstill Period.  Commencing on the date hereof and ending on the earlier of June 15, 2020, or the occurrence of any Terminating Event (defined below) (such date, the "*Standstill Termination Date*," and such period, the "*Standstill Period*"), the Lender will not take any action to enforce its lien on and security interest in the Equity Collateral pursuant to the Pledge Agreements; provided, however, that the foregoing shall not toll any applicable notice and cure period with respect to any Event of Default.

As used herein, "*Terminating Event*" means (a) the occurrence of any default or event of default under the Guaranties and/or any other of the Loan Documents from and after the date of the mutual execution of this Agreement, (b) the occurrence of any event that is materially adverse to the business, properties, assets, condition (financial or otherwise), prospects or results of operations of FMB and/or either of the Guarantors, and/or (c) the occurrence of any material breach of warranty or representation or covenant set forth in this Agreement or any of the other Standstill Documents (as defined below).

2.2    Late Fees and Default Interest.  The Guarantors acknowledge and agree that late fees and default interest arising from any other default under the Loan Documents shall continue to accrue during the Standstill Period.

2.3    Disgorgement.  If the Lender is, for any reason, compelled to surrender or disgorge any payment, interest or other consideration described hereunder to any person or entity because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such obligation or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by the Lender, and the Guarantors shall be liable to, and shall indemnify, defend (engaging counsel acceptable to the Lender) and hold the Lender harmless for, the amount of such payment or interest surrendered or disgorged.  The provisions of this Section shall survive execution and exchange of this Agreement.

2.4    No Defenses: Reliance.  The Obligors hereby confirm and reconfirm that there are no existing defenses, claims, counterclaims or rights of recoupment or set-off against the Lender in connection with the negotiation, preparation, execution, performance or any other matters relating to the Loan Documents (including, without limitation, the Guaranties), this Agreement or any of the other Standstill Documents.  It is hereby further acknowledged and agreed that, notwithstanding anything to the contrary set forth in this Agreement, the Lender has and shall have no obligation to further amend the Loan Documents, or otherwise further restructure the Obligations, and that neither the Lender nor its representatives have made any agreements with, or commitments or representations or warranties to, the Obligors, either in writing or orally, other than as expressly stated in this Agreement, the other Standstill Documents and the Loan Documents.  Nothing contained in this Agreement, or any compliance with the terms of this Agreement or any of the instruments, agreements or documents referred to in this

Agreement, shall impose any obligation on the part of the Lender to consummate a further restructure of the Obligations.

2.5    No Contest. In consideration of this Agreement, the Obligors hereby agree that after a Terminating Event, none of the Obligors shall (a) contest the exercise of the Lender's rights to foreclose or otherwise take action with respect to the liens on and security interests of the Lender in and to the collateral for the Obligations, the Loan Documents and collateral security described in this Agreement (including, without limitation, the Trust's membership interests in FMB), or (b) contest the appointment of any receiver in connection with the operation of any such property and assets.

2.6    Release. In consideration of the accommodations being made available by the Lender to or for the benefit of any and all of the Obligors under this Agreement, including, without limitation, the forbearance on the part of the Lender, and Lender's commitments to purchase the Purchased Interest (as defined below), the Obligors, for themselves and their affiliates, members, managers, officers, directors, settlors, trustees and beneficiaries, and their respective successors and assigns, does hereby release and forever discharge the Lender, its affiliates and participants and their respective officers, directors, members, managers, shareholders, agents, employees, representatives, successors and assigns (the "*Released Parties*") of and from any and all claims, counterclaims, demands, actions and causes of action of any nature whatsoever, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to the transactions described in this Agreement, which each Obligor has or hereafter can or may have against the Released Parties, or any of them, for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of this Agreement ("*Released Claims*"), and each Obligor further covenants not to make demand, bring or voluntarily participate or aide in, any claim, suit or other action against any of the Released Parties with respect to any Released Claims or any matters related thereto.

2.7    Waiver. Neither Guarantor will exercise any rights which it may acquire by reason of any payment made to Lender and/or any other person or entity that is a creditor of FMB, whether by way of subrogation, reimbursement or otherwise, until the prior payment, in full, of all Obligations. Any amount paid to either Guarantor on account of any payment made hereunder prior to the payment in full of all Obligations shall be held in trust for the benefit of the Lender and shall immediately be paid to the Lender and credited and applied against the Obligations, whether matured or unmatured, in accordance with the terms of the Loan Documents (or other agreement(s) pursuant to which such Obligations are outstanding). For so long as any Obligations remain outstanding, the Guarantor shall refrain from taking any action or commencing any proceeding against FMB (or its successors or assigns) to recover any amounts in respect of payments made under any Guaranty to the Lender. The Obligors each waive and release(x) any and all rights to compel Lender, or object to demands of Lender made to any person or entity, to marshal assets of any of the Obligors at any time, (y) any and all claims, rights and defenses with respect to any intercreditor agreements Lender may enter into with any other person or entity that is or claims to be a creditor of any of the Obligors, and (z) any and all claims, rights and defenses with respect to the order and/or sequence of recourse against the Obligors or their assets by made by any court of competent jurisdiction with respect to or agreed to between and among Lender and any other person or entity that is or claims to be a creditor of any of the Obligors.

2.8    Subordination. The Guarantors hereby fully and completely subordinate any and all claims, demands, debts, liabilities or obligations (including, without limitation, all principal, interest, fees and charges accrued or that will accrue on any of the foregoing) owed to either of them, and any and all liens, security interests, pledges, right, title, lien or interest in and to any and all FMB Collateral to the Obligations and to the Lender Lien.

4

2.9    Bankruptcy.

(a)    The Obligors acknowledge and agree that this Agreement and other accommodations by the Lender have been and are intended to permit the Obligors to have the opportunity to resolve FMB's financial problems (and thereby, the financial problems of the Guarantors) without the need for any of them to file a petition under the United States Bankruptcy Code (11 U.S.C. § 101 et seq.) (as amended from time to time, the "**Bankruptcy Code**"), and to receive other benefits approximating those benefits available if any of them had filed bankruptcy before entering into this Agreement. The Obligors acknowledge that the Lender has foregone significant rights for extended time periods, and the Lender would otherwise be prejudiced if the provisions of this Section 2.9 were not enforced in accordance with their terms. Accordingly, and as a material inducement to the Lender entering into this Agreement, each Obligor, for itself, and for any and all successors and assigns thereof, including without limitation, the bankruptcy estates, and trustees of any and all of them  (all of which for the purposes of this Section 2.9 shall be referred to individually and collectively as the "**Benefited Parties**"), knowingly, voluntarily and intentionally stipulates and agrees, to the fullest extent allowed by law and with the full intention that such stipulation and agreement shall survive the filing of any bankruptcy, that, in the event any of the Benefited Parties file for protection under or become a debtor or debtor in possession under the Bankruptcy Code, it being understood that this agreement is not intended to preclude such filing, or if any involuntary petition in bankruptcy is filed against any of the Benefited Parties, then, in addition to any and all other rights and remedies available to the Lender, the Lender shall be entitled to the immediate termination of the automatic stay provisions of 11 U.S.C. §362, granting the Lender complete relief and allowing the Lender to exercise all legal rights and remedies against the FMB Collateral and to commence or continue any judicial proceeding in any court of competent jurisdiction related to its rights and remedies against the FMB Collateral, including, without limitation, the right to sale in a foreclosure action, (such relief referred to as "**Relief from the Automatic Stay**"). The Benefited Parties shall not directly or indirectly oppose or otherwise defend against or interfere with the Lender's efforts to gain Relief from the Automatic Stay as described in this paragraph. The Benefited Parties agree that the Lender is entitled to receive all proceeds of the FMB Collateral, either because all of the FMB Collateral is not deemed to be property of the bankruptcy estate, or because the proceeds of the FMB Collateral are the Lender's cash collateral which the Lender must receive and apply to the Obligations in order to have adequate protection of its interests pursuant to Sections 361 and 363 of the Bankruptcy Code, but without prejudice to the Lender's right to assert a claim for additional adequate protection. It is specifically agreed and acknowledged by the Benefited Parties that termination of the automatic stay hereunder by the appropriate Bankruptcy Court whenever the Lender is entitled to Relief from the Automatic Stay shall be deemed to be, inter alia, "for cause" pursuant to §362(d)(1) of the Bankruptcy Code (11 U.S.C. §362|d]|1]); (b) In addition to the foregoing, upon termination of any automatic stay of 11 U.S.C. §362, Lender shall be entitled to pursue any and all rights, claims and remedies available to it hereunder or under law with respect to the FMB Collateral, including, but not limited to, the commencement and/or prosecution of appropriate acts or actions to effect a sale or other disposition of the FMB Collateral.

(b)    The Benefited Parties shall not obtain any credit or incur any debt and shall oppose any effort on behalf of any of the Benefited Parties' bankruptcy estates to obtain any

5

credit or incur any debt senior to or equal in priority with the Obligations and/or secured by a lien on the any property (including, without limitation, the FMB Collateral) pursuant to 11 U.S.C. §364(d) or otherwise

Section 3.  **Purchase and Sale of the Purchased Interest**

  3.1 <u>Lender Acquisition of Judith's Rights with Respect to Advances</u>.  On the later of (i) the date that is ninety-five (95) days after the indefeasible, final and full payment of the Obligations to Lender strictly in accordance with the Loan Documents and this Agreement (the "***Preference Period***"), and (ii) the date that any bankruptcy case commenced during the Preference Period in which any of the Obligors or Judith is a debtor is closed, and subject to such indefeasible, final and full payment of the Obligations to Lender, Obligors shall certify, represent and warrant to Lender in writing in form and substance reasonably satisfactory to Lender in its sole and absolute discretion, that none of them have knowledge after reasonable diligence of (i) any threatened or pending action, proceeding or demand by any person or entity against Lender to avoid or recover any amounts transferred to or for the benefit Lender on account of any of the Obligations, or for damages against Lender on account of any amounts transferred to or for the benefit of Lender, and (ii) any facts upon which any amounts paid to or for the benefit of Lender on account of any of the Obligations can be avoided or recovered pursuant to 11 U.S.C. §§550, 551 or any similar state or federal law, rule, statute, regulation or theory.

  3.2 Lender agrees to purchase all of Judith's right, title and interest against FMB and its assets arising from the Advances (the "***Purchased Interest***") seven (7) business days after the satisfaction of all of the provisions of Section 3.1 above occurring after the expiration of the Preference Period (the "***Purchase Date***") if and only if

    (a) Lender has received indefeasible, final and full payment of the Obligations as of the Purchase Date; and

    (b) Lender has no good faith basis to believe that any action or proceeding against it to avoid or recover any amounts transferred to it on account of the Obligations is threatened or pending on the Purchase Date.

  3.3 <u>Purchase Price</u>.  On the Purchase Date, Lender shall pay Judith the amount of the Advances remaining unpaid to Judith on the Purchase Date (the "***Purchase Price***") as the full and complete purchase price for the Purchased Interest.

Section 4.  **Representations, Warranties and Additional Covenants**

  4.1 The Obligors hereby reassert and restate all of their representations and warranties set forth in the Guaranty and the other Loan Documents, without qualification, as of the date hereof as if set forth at length.

  4.2 As a further inducement to the Lender to enter in this Agreement, the Obligors each represent and warrant to the Lender as follows:

    (a) Each Obligor has the legal capacity to enter into and perform this Agreement and the other instruments, agreements and documents to be executed and delivered by it pursuant to this Agreement (together with this Agreement, collectively, the "***Standstill Documents***").

6

(b)    This Agreement is, and when executed and delivered the other Standstill Documents will be, valid, binding and enforceable against each Obligor in accordance with their respective terms.

(c)    Each Obligor is fully aware of the terms set forth in this Agreement and has voluntarily, and without coercion or duress of any kind, entered into this Agreement intending to be legally bound by its terms.

(d)    There are no actions or proceedings pending or, to the knowledge of each Obligor, threatened against or affecting any Obligor or any of their properties, before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which are substantial in amount or which, if determined adversely, would have a material adverse effect on the financial condition of the Guarantor; and there are no judgments against or affecting any of the Obligors or any of their properties, real or personal.

(e)    No consent, approval or authorization of, or filing, registration or qualification with, any person or entity is required to be obtained by any Obligor in connection with the execution and delivery of this Agreement or the other Standstill Documents, or any undertaking or performance of any liability or obligation hereunder or thereunder.

(f)    The execution and delivery of this Agreement and the other Standstill Documents, and the performance by the Obligors of their obligations hereunder and thereunder, will not conflict with, or result in breach of, any of the terms, covenants and provisions of any judgment, writ, injunction or decree of any court or governmental authority, or any agreement or instrument to which each Obligor is a party or by which it is or may be bound.

(g)    No representation or warranty by any Obligor contained in this Agreement, or any certificate or other instrument, agreement or document furnished to the Lender pursuant to this Agreement or in connection with the preparation and negotiation of this Agreement, contains any untrue statement of material fact or omits to state a material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made.

4.3    Jaime, in his capacity as the sole Manager of FMB, represents to the Lender that he has consented to the pledge of the Equity Collateral to the Lender pursuant to the Pledge Agreements and to the transfer of the Equity Collateral to the Lender pursuant to the Pledge Agreements. Jaime hereby covenants and agrees that if the Equity Collateral is transferred to the Lender pursuant to the Pledge Agreements, he shall, in his capacity as the Manager of FMB, take such action as may be necessary to effect such transfer including, without limitation, executing such consent as may be required pursuant to FMB's First Amended and Restated Operating Agreement, dated September 15, 2017.

4.4    The Obligors hereby expressly acknowledge that the foregoing representations and warranties are being specifically relied upon by the Lender as a material inducement to by the Lender to enter into this Agreement and to forbear from exercising the Lender's rights and remedies under the Loan Documents and applicable law. The foregoing representations and warranties shall survive the execution and delivery of this Agreement.

7

## Section 5. **Miscellaneous**

5.1    Accommodation Purchase Liability.  In partial consideration for the Lender's agreement to purchase the Purchased Interests subject to the terms of this Agreement, concurrent with the execution of this Agreement FMB shall pay to the Lender a non-refundable payment of Four Hundred Thousand and 00/100 Dollars ($400,000.00), which amount shall be added to the principal amount of the Loan..

5.2    Purchase and Sale of 45 Industrial Way.  As a condition subsequent to the Lender's obligations hereunder, FMB covenants and agrees that, on or before May 29, 2020, FMB will convey to the Lender or one of its designated affiliates all of FMB's right, title and interest in that certain real estate property and improvements thereon located at 45 Industrial Way, Buellton, CA 93427, on substantially the terms set forth in the letter of intent attached hereto.

5.3    Costs and Expenses.  The Obligors shall pay within ten (10) business days all costs and expenses (including legal fees), if any, incurred by the Lender or its affiliates, or their respective successors and assigns, in connection with the enforcement of this Agreement.  The legal fees of the Lender's counsel shall be calculated on a time spent basis, based upon the standard hourly rates of such counsel generally charged to clients of that firm on similar matters.

5.4    Further Assurances.  Upon the request of the Lender at any time after the date hereof, each party to this Agreement shall, at such party's expense, forthwith execute and deliver such documents and take such other actions as the Lender or its counsel may reasonably request to effectuate the purposes of this Agreement.

5.5    Reliance.  The Obligors expressly understands and further agrees that the Lender is relying on all terms, covenants, conditions, warranties and representations set forth in this Agreement including, without limitation, the Lender's right to terminate the Standstill Period at any time upon the occurrence of a Terminating Event, as a material inducement to the Lender to enter into this Agreement.

5.6    Successors and Assigns.  This Agreement shall constitute a continuing agreement between the Lender and the Obligors, and all powers, rights, privileges, obligations, and duties herein set forth shall apply to, inure to the benefit of, and be binding on the heirs, executors, administrators, successors and assigns of the Lender and the Obligors.

5.7    Governing Law and Venue.  This Agreement and any dispute between or among the parties arising from or related to this Agreement or the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to such jurisdiction's principles of conflict of laws.  Each of the parties hereto consents to the exclusive jurisdiction and venue of the courts, as the case may be, of Suffolk County, Massachusetts or the United States Federal Court District of Massachusetts, Eastern Division.

5.8    Remedies Cumulative.  The rights and remedies herein are cumulative, and not exclusive of other rights and remedies which may be granted or provided by law.

5.9    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The delivery by a party of a telecopy or facsimile signature to this Agreement shall have the same effect as the delivery of an original signature.  The parties shall thereafter promptly deliver original signature pages, however any failure or delay in the delivery of an original signature shall not vitiate or impair the legally binding effect of a telecopy or facsimile signature.

8

5.10    Notices.  All notices and other communications hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile, (c) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt, to a party at the address set forth below (which may be changed in accordance with these notice procedures):

| | |
|---|---|
| If to the Lender: | White Winston Select Asset Funds, LLC<br>265 Franklin St., Suite 1702<br>Boston, MA 02110<br>Attn:  Todd M. Enright<br>Fax: 801-938-7540 |
| with a copy to: | McCarter & English, LLP<br>265 Franklin St.<br>Boston, MA 02110<br>Attention: Benjamin M. Hron |
| If to FMB: | Figueroa Mountain Brewing, LLC<br>45 Industrial Way<br>Buellton, CA 93427<br>Fax: |
| with a copy to: | Buynak, Fauver, Archbald & Spray, LLP<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101<br>Attn: Michael S. Fauver<br>Fax: 805-966-7227 |
| If to the Trust: | James C. Dietenhofer and Judith A. Dietenhofer Living Trust<br>c/o Jaime Dietenhofer<br>P.O. Box 637<br>Los Olivos, CA 93441 |
| with a copy to: | |
| If to Jaime: | Jaime Dietenhofer<br>c/o Figueroa Mountain Brewing, LLC<br>45 Industrial Way<br>Buellton, CA 93427<br>Fax: |
| with a copy to: | Buynak, Fauver, Archbald & Spray, LLP<br>820 State Street, 4th Floor<br>Santa Barbara, CA 93101<br>Attn: Michael S. Fauver<br>Fax: 805-966-7227 |

9

5.11    <u>No Third-Party Beneficiaries</u>.  Except to the extent, if at all, otherwise expressly provided herein, the provisions of this Agreement shall not confer any rights or remedies on anyone not a party to this Agreement, and no person shall have the right to claim the rights of a third party beneficiary hereunder (other than the heirs, administrators, personal representatives, successors and assigns of the Lender).

5.12    <u>Neutral Construction; No Coercion or Duress</u>.  This Agreement is the product of arm's-length negotiations among the parties, and each of the parties has had the opportunity to obtain, and has obtained, the advice of counsel with respect to the matters set forth herein and therein.  Each of the parties agrees that no party will claim that any ambiguity in this Agreement shall be construed against the other party or against the drafter hereof or thereof.  Each party hereby represents and warrants to the others that such party is fully aware of the terms set forth in this Agreement and has voluntarily, and without coercion or duress of any kind, entered into this Agreement intending to be legally bound by its terms.  Each Borrower Party represents and declares that in executing this Agreement, it is relying solely upon its own judgment, belief and knowledge, and the advice or recommendations of its own independently chosen counsel considering the nature, extent, duration of their rights and claims hereunder and that it has not been influenced to any extent whatsoever in executing this Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by the Lender or any persons representing the Lender.

5.13    <u>Entire Agreement; Amendment</u>.  This Agreement and the documents and instruments referred to herein embody the entire agreement and understanding between the parties relating to the subject matter hereof and there are no covenants, promises, agreements, conditions or understandings, oral or written, except as herein set forth.  This Agreement may not be amended, waived or discharged except by an instrument in writing executed by the party against whom such amendment, waiver or discharge is to be enforced.

5.14    <u>Severability of Terms</u>.  If any term, covenant or condition of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

5.15    <u>JURY TRIAL WAIVER</u>.  THE PARTIES HEREBY MUTUALLY WAIVE ANY AND ALL RIGHTS THAT THEY MAY NOW OR HEREAFTER HAVE UNDER THE LAWS OF THE UNITED STATES OF AMERICA, ANY STATE OR TERRITORY, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING EITHER DIRECTLY OR INDIRECTLY IN ANY LITIGATION, ACTION OR PROCEEDING BETWEEN OR AMONG THE PARTIES OR THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

**THE BORROWER PARTIES ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION. THE BORROWER PARTIES FURTHER ACKNOWLEDGES THAT THE LENDER RESERVES ALL RIGHTS TO PREJUDGMENT REMEDIES TO WHICH IT MAY BE ENTITLED AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER PARTIES HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THEIR RIGHTS TO NOTICE AND HEARING WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE LENDER MAY DESIRE TO USE.**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and exchanged, under seal, as of the day and year first above written.

BORROWER PARTIES

**FIGUEROA MOUNTAIN BREWING, LLC**

By: _____        Witness: _____
Jaime Dietenhofer, CEO

_____              Witness: _____
Judith A. Dietenhofer

By: _____        Witness: _____
Jamie Dietenhofer

**JAMES C. DIETENHOFER AND JUDITH A. DIETENHOFER LIVING TRUST**

By: _____        Witness: _____
Name: JUDITH A. DIETENHOFER
Title: Manager

LENDER

**WHITE WINSTON SELECT ASSET FUNDS, LLC**

By: _____        Witness: _____
Todd M. Enright
Authorized Person

12

ME1 33051586v.2

**EXHIBIT "F"**



October 21, 2020


<u>Via Electronic Mail and Facsimile Only</u>
Christopher E. Prince, Esq.
Matthew A. Lesnick, Esq.
Lesnick Price & Pappas LLP
315 W. Ninth Street, Suite 705
Los Angeles, California 90015
Email:  cprince@lesnickprince.com; matt@lesnickprince.com
Facsimile:  (213) 493-6596


> ***Re:   Figueroa Mountain Brewing, LLC, USBC Case No. 9:20-bk-11208-MB;
> Objection to Subchapter V Small Business Debtor Designation***


Dear Chris and Matt:

As you are aware, our firm represents White Winston Select Asset Funds, LLC ("<u>White Winston</u>") in connection with the pending chapter 11 bankruptcy case of your client, Figueroa Mountain Brewing, LLC (the "<u>Debtor</u>").

In its Voluntary Petition filed on October 5, 2020 [Doc. No. 1], the Debtor made a designation that it is a "small business debtor" electing to proceed under subchapter V of chapter 11 of the Bankruptcy Code. However, to proceed under subchapter V, a debtor must have "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition…in an amount not more than $7,500,000[1] (excluding debts owed to 1 or more affiliates or insiders)."  *See,* 11 U.S.C §§ 101(51D) and 1182(1).  As discussed in detail below, White Winston believes that the Debtor has aggregate noncontingent, liquidated, non-insider debt totaling well over the $7,500,000 debt limit prescribed by 11 U.S.C § 101(51D), and therefore does not qualify as a subchapter V "small business debtor."  Based on the foregoing, White Winston requests that the Debtor immediately amend its Voluntary Petition to eliminate its designation as a "small business debtor" and election to proceed under subchapter V.

Enclosed herewith is a list of all of the Debtor's noncontingent liquidated debts as of the Debtor's bankruptcy filing date of October 5, 2020 (the "<u>FMB Debt List</u>"), which list was prepared by White Winston using information set forth in pleadings filed by the

---

[1] Under the Coronavirus Aid, Relief and Economic Security (CARES) Act, which became effective March 27, 2020, the aggregate debt limit for a subchapter V debtor was temporarily increased to $7,500,000.

JULIET Y. OH   ATTORNEY AT LAW   ▪   EMAIL: JYO@LNBYB.COM   ▪   DIRECT: 310.229.3348
10250 CONSTELLATION BLVD., STE 1700, LOS ANGELES, CA 90067   ▪   TEL: 310.229.1234   FAX: 310.229.1244   WWW.LNBYB.COM



October 21, 2020
Page 2

Debtor in its bankruptcy case and/or information previously provided by the Debtor to White Winston.  As you will see, the FMB Debt List provides specific references to each pleading and/or document from which the information was obtained.  In addition, for your ease of reference, I have enclosed copies of any non-pleading document from which the information used to prepare the FMB Debt List was obtained.  As reflected in the FMB Debt List, the total amount of the Debtor's noncontingent, liquidated secured and unsecured debt (excluding insider debt) is **$20,609,790.44**.  Although the Bankruptcy Code does not provide for the deduction of disputed debts from the calculation of a debtor's total debt under 11 U.S.C § 101(51D), even if the disputed debt owed by the Debtor to White Winston is deducted, the total amount of the Debtor's noncontingent, liquidated secured and unsecured debt (excluding insider debt) is **$11,119,072.10**.  Accordingly, based on the information provided by the Debtor to date, there is no question that the total amount of the Debtor's noncontingent liquidated non-insider debts exceeds the $7,500,000 debt limit prescribed by 11 U.S.C § 101(51D).

For the reasons articulated above, the Debtor does not qualify as a subchapter V "small business debtor" under 11 U.S.C § 101(51D).  White Winston requests that the Debtor file an amendment to its Voluntary Petition to eliminate its designation as a "small business debtor" and election to proceed under subchapter V on or before Monday, October 26, 2020.  Otherwise, White Winston will proceed with the filing of a motion objecting to the Debtor's designation and seeking a Court determination regarding the Debtor's qualification as a "small business debtor."  White Winston reserves all of its rights, claims and remedies in connection with any such motion including, without limitation, its right to seek sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure for having to file the motion given that it is abundantly clear that the Debtor is not eligible for a subchapter V case.

I look forward to hearing from you.

Very truly yours,

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By:_____
    JULIET Y. OH

cc (w/encls):  M. Douglas Flahaut, Esq.
               Brian D. Fittipaldi, Esq.
               Jeffrey D. Sternklar, Esq.
               Eve H. Karasik, Esq. (i/o)

**FIGUEROA MOUNTAIN BREWING, LLC DIP**

**Case #9:20-bk-11208-MB**

**NON-INSIDER LIABILITIES**

| CREDITOR | NATURE OF CLAIM | Claim Amount | Documentation of Claim Amount |
|---|---|---|---|
| Trade Creditors/Unpaid Bills | Accounts Payable | $5,825,216.68 | Debtor's Submitted Doc 64, Pages 223-290 |
| plus: Corrections to Certain Obligations | | | |
| Pacific HR | Payroll Taxes/Benefits | $40,405.42 | Increase per Revised amount shown on Debtor's Submitted Doc 64, Page 222 over amount shown at Page 269 |
| Dept. of Treasury | Taxes | $31,821.06 | Increase per Revised amount shown on Debtor's Submitted Doc 64, Page 222 over amount shown at Pages 239-240 |
| State Board of Equalization | Taxes | $76,045.25 | Increase per Revised amount shown on Debtor's Submitted Doc 64, Page 222 over amount shown at Page 282 |
| less: Obligations to Insiders | | | |
| FME Arroyo Grande (Avenida Caballo) | Inter-company Account | ($368,959.32) | Debtor's Submitted Doc 64, Pages 251 |
| Jaime Dietenhofer | Net Advances to Principal | $1,293.33 | Debtor's Submitted Doc 64, Pages 256 |
| James Dietenhofer | Net Advances to Principal | ($118,416.71) | Debtor's Submitted Doc 64, Pages 257 |
| Judie Dietenhofer | Net Advances to Principal | ($87,308.54) | Debtor's Submitted Doc 64, Pages 259 |
| Net Non-Insider Accounts Payable | | $5,400,097.17 | |
| Montecito Bank | Loan #6227896 | $3,135,523.33 | Debtor's Submitted Doc 64, Page 5 |
| | Loan #6228244 | $285,740.60 | Debtor's Submitted Doc 64, Page 6 |
| Total Montecito Bank debt | | $3,421,263.93 | |
| CA Dept. of Taxation | Sales Taxes | $396,477.12 | Debtor's Submitted Doc 64, Page 222 |
| Allan Teixeira | Loan | $300,000.00 | Debtor's Submitted Doc 1, Chpt 11 Petition |
| Ultimate Funding Solutions | Loan | $69,996.56 | Debtor's Submitted Doc 1, Chpt 11 Petition |
| Mechanics Bank | Payroll Protection Plan Loan (PPP) | $944,950.00 | Debtor's Submitted Doc 1, Chpt 11 Petition |
| U.S. Small Business Administration | Economic Injury Disaster Loan (EIDL) | $150,000.00 | Debtor's Submitted Doc 1, Chpt 11 Petition |
| Me & Eds | Note dated 12/1/18 | $100,810.70 | Debtor's Submitted Doc 64, Pages 223-290 |
| White Winston Select Asset Funds, LLC | Note dated 7/26/19 | $9,490,718.30 | White Winston Payoff Stmt. as of 10/5/20 (enclosed) |
| Rust Belt | Schraderbrau Royalties | $67,586.53 | 7/13/20 Email from Jen Pommier re Rust Belt (enclosed) |

| | | | |
|---|---|---|---|
| Unique Funding Solutions LLC | | $149,332.82 | 8/15/19 Judgment by Confession (NY State) (enclosed) |
| CFG Merchant Solutions | Merchant Cash Advance Loan | $67,196.16 | 8/20/19 email from Lender (enclosed) |
| Funding Metrics, LLC d/b/a Lendini | 2/11/19 Agreement | <u>$51,361.15</u> | 8/22/19 report from Lender (enclosed) |
| **TOTAL** | | **$20,609,790.44** | |



## PAYOFF SHEET
*As of October 5, 2020*

BORROWER:       FIGUEROA MOUNTAIN BREWING, LLC

LENDER:         WHITE WINSTON SELECT ASSET FUNDS, LLC

SECURITIES:     SECURED PROMISSORY NOTE DATED JULY 26, 2019 AS MODIFIED BY
                LOAN MODIFICATION AGREEMENT DATED NOV. 12, 2019, AND BY
                SECOND LOAN MODIFICATION AGMT. DATED JAN. 16, 2020, AND BY
                THIRD LOAN MODIFICATION AGMT. DATED APRIL 6, 2020

PRINCIPAL BALANCE                                    $9,465,740.58

ACCRUED AND UNPAID INTEREST THROUGH:
       October 5, 2020                                 $24,977.72

ACCRUED FEES AND REIMBURSEMENTS DUE:                     $-0-

LEGAL & PROF. FEES INCURRED:                             $-0-

                        AMOUNT DUE                   $9,490,718.30

                Per Diem:    $4,995.81

All figures are given upon the condition that they will not be considered an estoppel against White Winston
Select Asset Funds, LLC.   Figures are void after ten (10) days from the date of Payoff Sheet.

**ALL FUNDS MUST BE MADE PAYABLE BY WIRE,**
**BANK CHECK OR CERTIFIED FUNDS TO LENDER**

**Robert P. Mahoney**

| | |
|---|---|
| **From:** | T.M. Enright <tenright@whitewinston.com> |
| **Sent:** | Friday, October 16, 2020 11:02 AM |
| **To:** | Robert P. Mahoney |
| **Subject:** | Fwd: Schrader with Formula Corrections |
| **Attachments:** | Schraderbrau FMB Royalties.xlsx |

**T.M. Enright, Partner**

**White Winston**
Select Asset Funds

850.570.4793 (Direct Dial)
617.830.2200 (Administrative)

tenright@whitewinston.com

---

**From**: Jaime Dietenhofer <jaime@figmtnbrew.com>
**Date**: July 13, 2020 at 1:47:34 PM EDT
**To**: T.M. Enright <tenright@whitewinston.com>, Steve Almaraz <steve@figmtnbrew.com>, Jen Pommier <jen@figmtnbrew.com>, Robert P. Mahoney <rmahoney@whitewinston.com>
**Subject**: Fwd: Schrader with Formula Corrections

Get Outlook for iOS

---

**From:** Jen Pommier <Jen@figmtnbrew.com>
**Sent:** Monday, July 13, 2020 10:46 AM
**To:** Jaime Dietenhofer
**Subject:** Schrader with Formula Corrections

Hi

Here is the spreadsheet with Corrections to David's formulas.  Payment gets made to RB and then they make the Sony payment.

Cheers,
Jen Pommier
Controller
Figueroa Mountain Brewing Company

TOTAL OWED TO RUST

$            67,586.53

| | |
|---|---|
| Sony | $  6,369.01 |
| Rust Belt | $ 61,217.52 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF STEUBEN

UNIQUE FUNDING SOLUTIONS LLC ,

Index No.: E2019-1174CV

Plaintiff,

vs.

**JUDGMENT BY CONFESSION**

FIGUEROA MOUNTAIN BREWING, LLC
AND FIGUEROA MOUNTAIN MUG CLUB
LLC AND 71-73 INDUSTRIAL WAY LLC
AND FIGUEROA MOUNTAIN
PRODUCTION LLC AND AGUA SANTA
BREWING LLC AND LIQUAMENTUM LLC
AND AVENIDA CABALLO LLC AND
FIGUEROA MOUNTAIN DISTRIBUTION
LLC AND FIGUEROA MTN ENT ARROYO
GRANDE LLC  AND JAIME GRAY
DIETENHOFER ,

Defendants

| | |
|---|---|
| Amount Confessed: | $195,750.00 |
| Less Payments Received: | $83,638.85 |
| **Amount Due and Owing:** | **$112,111.15** |
| Interest at 16%: | $0.00 |
| Attorney's Fees confessed: | $36,996.67 |
| Costs by Statute (CPLR 3218[b]): | $15.00 |
| Filing Fee (CPLR 8018[a]): | $210.00 |
| Total Costs and Disbursements: | $225.00 |
| **Total:** | **$149,332.82** |

<u>ATTORNEY'S AFFIRMATION</u>

STATE OF NEW YORK
COUNTY OF NASSAU
    The undersigned, an attorney at law of the State of New York, affirms that he is the
attorney of record for the Plaintiff UNIQUE FUNDING SOLUTIONS LLC  herein, and states
that the disbursements above specified are correct and true and have been or will necessarily be

made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: 8/14/2019

*Joe Lieberman*

Joe Lieberman, Esq.
PO Box 356
Cedarhurst, New York 11516
Tel: (718) 316-6893

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants herein, sworn to on 5/30/2019;

NOW, ON MOTION OF Joe Lieberman, Esq., attorney for Plaintiff it is

ADJUDGED, that Plaintiff UNIQUE FUNDING SOLUTIONS LLC having an address at 71 S CENTRAL AVENUE, VALLEY STREAM, NY 11580, have judgment and do recover of Defendant FIGUEROA MOUNTAIN BREWING, LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN MUG CLUB LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND 71-73 INDUSTRIAL WAY LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN PRODUCTION LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND AGUA SANTA BREWING LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND LIQUAMENTUM LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND AVENIDA CABALLO LLC is located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MOUNTAIN DISTRIBUTION LLC located at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 AND FIGUEROA MTN ENT ARROYO GRANDE LLC , having an address at 45 INDUSTRIAL WAY, BUELLTON, CA 93427-9565 and Defendant JAIME GRAY DIETENHOFER , having an address at 2495 SANTA YNEZ ST, BUELLTON, CA 93427 jointly and severally, the sum of $112,111.15 plus interest at sixteen percent (16%) as calculated by the Clerk in the amount of $0.00, plus costs and disbursements as taxed by the Clerk in the amount of $225.00, plus attorneys' fees in the amount of $36,996.67, for a total sum of $149,332.82; and that

Plaintiff UNIQUE FUNDING SOLUTIONS LLC shall have execution thereof.

_Judith M. Wester_
CLERK

Judgment entered the ___15th___ day of ___August___, 2019

Index No.                Year  RJI No.               Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF STEUBEN

---

UNIQUE FUNDING SOLUTIONS LLC ,

                                              Plaintiff,

                    -against-

FIGUEROA MOUNTAIN BREWING, LLC AND FIGUEROA MOUNTAIN MUG
CLUB LLC AND 71-73 INDUSTRIAL WAY LLC AND FIGUEROA MOUNTAIN
PRODUCTION LLC AND AGUA SANTA BREWING LLC AND LIQUAMENTUM LLC
AND AVENIDA CABALLO LLC AND FIGUEROA MOUNTAIN DISTRIBUTION LLC
AND FIGUEROA MTN ENT ARROYO GRANDE LLC  AND
JAIME GRAY DIETENHOFER

                                              Defendants.

---

### JUDGMENT

---

**JOE LIEBERMAN, ESQ.**
*Attorney for Plaintiff*

*Address, Telephone*
**PO BOX 356
CEDARHURST, NEW YORK 11516
PHONE: (718) 316-6893
FAX: (516) 308-9383**

---

Service of a copy of the within       is hereby admitted.

Dated,

                                            Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order       of which the within is a true copy will be presented for

Case 8:20-bk-08966-MC   Doc 108   Filed 10/28/20   Entered 10/28/20 15:38:58   Desc

settlement to the HON,          one of the judges
of the within named court, at                    on        at
Dated,                                                                Yours, etc.
                                                                      Attorney(s) for

**From:** RSC Liens <Liens@worldpay.com>
**Sent:** Tuesday, August 20, 2019 10:57 AM
**To:** Erika Perez <erikap@figmtnbrew.com>
**Subject:** RE: Figueroa Mountain Brewing

Good afternoon,
We received a UCC Lien Notice from funding creditor CFG Merchant Solutions,LLC due to a default on a
Merchant Cash Advance Loan for TIN/SSN# 30-0593323. Routed account by the amount of $67,196.16 as
stated in docs. The merchant must contact the representation for the funding creditor: **Jason Gang Esq at ph#:
(646)389-5610** to make payment arrangements for the balance due of $67,196.16. Worldpay will need a copy of
a signed release notice as proof of arrangement in order to release any funds on hold. All releases are to be
faxed to: 678-579-8772 or emailed to: liens@Worldpay.com

**Worldpay**

**Cristian Diaz**
Tax Levies & Liens
Atlanta

678-587-1036
Cristian.Diaz@worldpay.com

---

**From:** Erika Perez [mailto:erikap@figmtnbrew.com]
**Sent:** Tuesday, August 20, 2019 1:51 PM
**To:** RSC Liens
**Subject:** [EXTERNAL] Figueroa Mountain Brewing

To whom it may concern,

My name is Erika Perez and I am the Accounts payable person and I need your help .


We recently got levy through our merchant accounts .
Can you please give me more details .

Name
Amount

Here is one of the merchant accounts

542929806606075
542929806606059
542929806606067

If you can please help me with this information ,I would like to resolve this matter immediately .

Thank you




**Erika L Perez**

**Accounts Payable**

2

**Figueroa Mountain Brewing Co**

Phone (805) 694-2252 Ext 122

erikap@figmtnbrew.com

www.figmtnbrew.com

**NOTICE:** This e-mail message, including any attachments hereto, is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. If you are not the intended recipient(s), any unauthorized review, use, copying, disclosure or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by reply e-mail immediately and destroy the original and all copies (including electronic versions) of this message and any of its attachments.

3

**Robert P. Mahoney**

| | |
|---|---|
| **From:** | Hron, Benjamin <BHron@McCarter.com> |
| **Sent:** | Thursday, August 22, 2019 4:26 PM |
| **To:** | T.M. Enright (tenright@whitewinston.com); Sternklar, Jeffrey D. |
| **Cc:** | Robert P. Mahoney (rmahoney@whitewinston.com) |
| **Subject:** | FW: Demand for Accounting and Turnover |
| **Attachments:** | FIGUEROA MOUNTAIN BREWING LLC  Account Transaction.xlsx |

Gentlemen, please see below and attached. UFS has collected about $83K.

Please let me know if/how you'd like me to respond to #1 below. I'm inclined to just tell him that we (respectfully) disagree with his analysis but don't see the need to get into that at this time, but I defer to Jeff as to whether a stronger response is warranted to ensure we don't compromise our right to take action in the future.

**From:** Joe Lieberman [mailto:joe@ivyreceivables.com]
**Sent:** Thursday, August 22, 2019 3:03 PM
**To:** Hron, Benjamin
**Subject:** Re: Demand for Accounting and Turnover

Ben:

1. Just to be clear, UFS has collected $0 of White Winston's collateral. I'm not sure why that claim has been repeatedly asserted by White Winston. Are you asserting that every time a debtor defaults on its creditors, the senior creditor can claw-back all payments received by subordinate creditors? I'm sure you know that's an absurd claim that no judge would ever grant.

2. Attached is the accounting and payrun for the UFS deal.

Thanks,

Joe

On Thu, Aug 22, 2019 at 10:31 AM Hron, Benjamin <BHron@mccarter.com> wrote:

Joe,

We are still gathering information and will determine how to proceed once we understand how much of White Winston's collateral UFS (and others) have collected. Our primary focus is on making sure White Winston is paid what it is owed. Once we have the information we've requested from UFS (and others) we may be able to share more about our plan going forward. For now, what I can tell you is that your client's cooperation up to this point has been much appreciated and while we necessarily reserve all of our rights, we have no present intention, based on what we know now, of needlessly picking a fight that would likely cost more than the amount in dispute.

Please send me an accounting of the amounts UFS has collected by close of business on Friday.

| Deal ID | Entity Name | Funded Date | Total Funded Amount ($) |
|---|---|---|---|
| 163502 | FIGUEROA MOUNTAIN BREWING, LLC & THE ENTITIES LISTED ON EXHIBIT B | 5/31/2019 | $135,000.00 |

| Total Amount Received ($) |
|---|
| $83,638.85 |

| Date | Funds Transferred to UFS ($) |
|---|---|
| 8/15/2019 | $0.00 |
| 8/14/2019 | $0.00 |
| 8/13/2019 | $1,779.55 |
| 8/12/2019 | $1,779.55 |
| 8/11/2019 | $0.00 |
| 8/10/2019 | $0.00 |
| 8/9/2019 | $1,779.55 |
| 8/8/2019 | $1,779.55 |
| 8/7/2019 | $1,779.55 |
| 8/6/2019 | $1,779.55 |
| 8/5/2019 | $1,779.55 |
| 8/4/2019 | $0.00 |
| 8/3/2019 | $0.00 |
| 8/2/2019 | $1,779.55 |
| 8/1/2019 | $1,779.55 |
| 7/31/2019 | $1,779.55 |
| 7/30/2019 | $1,779.55 |
| 7/29/2019 | $0.00 |
| 7/28/2019 | $0.00 |
| 7/27/2019 | $0.00 |
| 7/26/2019 | $1,779.55 |
| 7/25/2019 | $1,779.55 |
| 7/24/2019 | $1,779.55 |
| 7/23/2019 | $1,779.55 |
| 7/22/2019 | $1,779.55 |
| 7/21/2019 | $0.00 |
| 7/20/2019 | $0.00 |
| 7/19/2019 | $1,779.55 |
| 7/18/2019 | $1,779.55 |
| 7/17/2019 | $1,779.55 |
| 7/16/2019 | $1,779.55 |
| 7/15/2019 | $1,779.55 |
| 7/14/2019 | $0.00 |
| 7/13/2019 | $0.00 |
| 7/12/2019 | $1,779.55 |
| 7/11/2019 | $1,779.55 |
| 7/10/2019 | $1,779.55 |
| 7/9/2019 | $1,779.55 |
| 7/8/2019 | $1,779.55 |
| 7/7/2019 | $0.00 |
| 7/6/2019 | $0.00 |
| 7/5/2019 | $1,779.55 |
| 7/4/2019 | $0.00 |
| 7/3/2019 | $1,779.55 |
| 7/2/2019 | $1,779.55 |
| 7/1/2019 | $1,779.55 |
| 6/30/2019 | $0.00 |
| 6/29/2019 | $0.00 |
| 6/28/2019 | $1,779.55 |
| 6/27/2019 | $1,779.55 |
| 6/26/2019 | $1,779.55 |
| 6/25/2019 | $1,779.55 |
| 6/24/2019 | $1,779.55 |
| 6/23/2019 | $0.00 |
| 6/22/2019 | $0.00 |
| 6/21/2019 | $1,779.55 |
| 6/20/2019 | $1,779.55 |
| 6/19/2019 | $1,779.55 |
| 6/18/2019 | $1,779.55 |
| 6/17/2019 | $1,779.55 |
| 6/16/2019 | $0.00 |
| 6/15/2019 | $0.00 |
| 6/14/2019 | $1,779.55 |
| 6/13/2019 | $1,779.55 |
| 6/12/2019 | $1,779.55 |
| 6/11/2019 | $1,779.55 |
| 6/10/2019 | $1,779.55 |
| 6/9/2019 | $0.00 |
| 6/8/2019 | $0.00 |
| 6/7/2019 | $1,779.55 |
| 6/6/2019 | $1,779.55 |
| 6/5/2019 | $0.00 |
| 6/4/2019 | $0.00 |
| 6/3/2019 | $0.00 |
| 6/2/2019 | $0.00 |
| 6/1/2019 | $0.00 |
| 5/31/2019 | $0.00 |

**From:** Joe Lieberman [mailto:joe@ivyreceivables.com]
**Sent:** Monday, August 19, 2019 7:50 PM
**To:** Hron, Benjamin
**Subject:** Re: Demand for Accounting and Turnover

Ben:

I've discussed our call with my clients, and here's our response to the requests:

Notwithstanding Unique Funding Solutions LLC's ("UFS") rights and without waiving any legal or equitable rights or remedies UFS may have, all of which are expressly reserved:

1. UFS agrees to notify third party garnishees of Figueroa that your client has a prior perfected security interest in Figueroa's AR and that funds should only be sent to UFS after your client is paid in full. My client will, however, let those parties know that once your client is paid off, my client will expect payment directed to them.

2. UFS will provide an accounting of funds paid by Figueroa to UFS on the current deal that remains in default.

However, it is important for my client to understand what the plan going forward is and how your client intends to proceed. As discussed, my client is willing to work together with your client on an amicable resolution that includes both parties getting paid their balances. But, from the tenor of our phone call, it seems that your client is more focused on "disgorging" payments made to UFS than resolving this matter. Also, I assume your client would agree that spending significant funds on litigation costs to attempt to recover $80-100k is a bad business decision, especially for a "disgorgement" claim that will not survive a motion to dismiss.

Again, my client is not challenging your client's priority position here, nor is my client attempting to interfere with your client's rights. my client is simply requesting that we work together to get paid. I'm sure you can understand that my client cannot stand by idly and do nothing and hope that maybe someday in the future they will receive payments.

I'm happy to jump on the phone and discuss this further.

Thanks,

Joe

On Mon, Aug 19, 2019 at 3:46 PM Hron, Benjamin <BHron@mccarter.com> wrote:

Thank you.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION TO STRIKE SMALL BUSINESS DEBTOR DESIGNATION AND SUBCHAPTER V ELECTION BY DEBTOR IN CHAPTER 11 PETITION; DECLARATIONS OF ROBERT P. MAHONEY AND JULIET Y. OH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 28, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com**
- **Joseph P Buchman    jbuchman@bwslaw.com, svasquez@bwslaw.com**
- **Brian D Fittipaldi    brian.fittipaldi@usdoj.gov**
- **Moriah Douglas Flahaut (TR)    douglas.flahaut@arentfox.com**
- **Eve H Karasik    ehk@lnbyb.com**
- **Paul J Laurin    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com**
- **Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com**
- **Lisa J Nilmeier    lnilmeier@milano-ri.com, lisanilmeier@gmail.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;hbaig@lesnickprince.com**
- **Jonathan C Sandler    jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com**
- **Felicita A Torres    torres@g-tlaw.com**
- **United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov**
- **Christian J Younger    christian@youngerlawsb.com, youngercr88474@notify.bestcase.com**
- **Ryan D Zick    rzick@ppplaw.com, bnesbitt@ppplaw.com**

**2.  SERVED BY UNITED STATES MAIL**: On **October 28, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 28, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail***
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 28, 2020 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

1

**SERVED BY UNITED STATES MAIL:**

2

United States Trustee (ND)
915 Wilshire Blvd., Suite 1850
3    Los Angeles, CA 90017

4    Moriah Douglas Flahaut (TR)
555 W. Fifth Street, 48th Floor
5    Los Angeles, CA 90026

6    Figueroa Mountain Brewing, LLC
45 Industrial Way
7    Buellton, CA 93427

8    **20 Largest Unsecured Creditors**:

9    Pacific HR                                State Board of Equalization
2028 Village Lane Suite #205               P.O. Box 942879
10   Solvang CA 93463                          Sacramento CA 94279-7070

11   Fauver, Large, Archbald & Spray LLP       Ironbite Fabrications
820 State St., 4th Fl.                     2209 Willow Rd
12   Santa Barbara, CA 93101                   Arroyo Grande CA 93420

13   Saxco International, LLC                   Opens, LLC
1855 Gateway Blvd., Suite 400              1946 Lake Shore Ave
14   Concord, CA 94520                         Los Angeles CA 90039

15   Harry E. Hagen, Treasurer-Tax Collector   Ladera Property Management
P.O. Box 579                              P.O. Box 60653
16   Santa Barbara, CA 93102-0579              Santa Barbara CA 93160

17   Allan Teixeira                            Saarloos Properties, LLC
550 Thousand Hills Rd.                    2822 Ballard Canyon
18   Pismo Beach, CA 93449                     Solvang CA 93463

19   Department of the Treasury                Ultimate Funding Solutions
1310 G Street NW Box 12                   483 Welch Road
20   Washington, DC 20005                      Eolia, MO 63344

21   Santa Maria Exchange Partners             Mechanics Bank
2925 Bristol St                           PO Box 6010
22   Costa Mesa, CA 92626                      Santa Maria, CA 93456

23   Associated Winery System, Inc.            U.S. SBA
7787 Bell Road                            PO Box 3918
24   Windsor, CA 95492                         Portland, OR 97208-3918

25   Westside Anacapa                          Ahern Rentals
1244 6th Street                           1401 Mineral Ave.
26   Santa Monica, CA 90401                    Las Vegas, NV 89106

27   Johnson & Johnson
680 Alamo Pintado Rd., Suite 102
28   Solvang, CA 93463

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**