CHRISTOPHER E. PRINCE (SBN 183553)
   cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
   matt@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth St., Suite 705
Los Angeles, CA  90015
Telephone:   (213) 493-6496
Facsimile:    (213) 493-6596

Counsel for Debtor and Debtor in Possession
Figueroa Mountain Brewing, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>FIGUEROA MOUNTAIN BREWING, LLC,<br><br>            Debtor and Debtor in<br>            Possession. | Case No. 9:20-bk-11208-MB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF DEBTOR FOR ENTRY OF AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT; AND (2) AUTHORIZING A "PRIVATE SALE" OR, IN THE ALTERNATIVE, (3) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES AND RELATED RELIEF**<br><br>———————————————<br>Hearing:<br>Date: May 16, 2022<br>Time: 10:00 a.m.<br>Held Remotely Using ZoomGov |

     PLEASE TAKE NOTICE that at the above-referenced date, time and location Figueroa Mountain Brewing, LLC, the debtor and debtor in possession in the above-referenced case (the "Debtor"), will and hereby does move the Court, pursuant to this notice of motion (the "Notice") and motion (the "Motion"), for entry of an order:

(1) authorizing the sale of substantially all the Debtor's assets (the "Assets") to Creekstone Mountain LLC ("Creekstone" or the "Buyer") -- in a "private sale" without further marketing or the opportunity for overbid -- under an Asset Purchase Agreement (the "APA") in substantially the same form as the agreement attached hereto as Exhibit A; or, in the alternative;

(2) approving the bidding procedures and auction format described below and scheduling an auction and a hearing for the Court to consider approval of the sale of the Assets to the highest bidder ("Sale Hearing"), including that the sale be free and clear of all liens, interests and encumbrances in not less than 60 days from the hearing on this Motion;

(3) establishing procedures for the assumption and assignment of executory contracts and unexpired leases and approving the form and manner of notice related thereto;

(4) approving the form of the various notices described in the concurrently filed Memorandum of Points and Authorities;

(5) finding that the form and service of this Motion was appropriate and either satisfied the requirements of the Federal Bankruptcy Rules and Local Bankruptcy Rules or that the Debtor is relieved from its obligation to comply with any inconsistent requirements.

The Debtor proposes to use the following bid procedures:

_Proposed Auction_.  If the Court does not approve a private sale to Creekstone and the Debtor receives any Qualified Bids from any Qualified Bidders (both terms defined below), then at the Sale Hearing, the Debtor will conduct an auction on the terms and conditions set forth below (the "Auction").  Only Qualified Bidders shall be permitted to bid at the Auction.

_Provisions Governing Qualifications of Bidders_.  To be a Qualified Bidder, a party must: (a) submit a Qualified Bid to the Debtor no later than five business days prior

to the Auction; and (b) demonstrate to the satisfaction of the Debtor sufficient financial qualifications to timely perform the obligations associated with its bid;

*Provisions Governing Qualified Bids*.  To be a Qualified Bid, the bid must:

(a) be accompanied by a deposit of $825,000 in the form of a cashier's check or wire transfer to the trust account of Debtor's counsel;

(b) be on substantially the same terms as the approved APA except that the purchase price must be sufficient to pay in cash at closing (1) $13 million; (2) all administrative claims (including professional fees and expenses as well as cure amounts for leases and executory contracts); and (3) an additional $250,000; and

(c)  not be subject to any financing, due diligence or other contingency.

*Bid Deadline*.  All bids must be submitted by email to counsel for the Debtor at the email addresses in the upper left-hand corner of the first page of this pleading by no later than five business days prior to the Auction (the "Bid Deadline").  The Debtor may, in its sole discretion, disregard bids from parties that are not Qualified Bidders.

*Due Diligence*.  Upon the execution of a non-disclosure agreement, the Debtor shall provide reasonable access to relevant documents, information and data to parties seeking to evaluate the Assets for purchase, provided that any such due diligence must be completed on or before five business days prior to the Auction.  The Debtor may decline to provide information to a party if, in the exercise of the Debtor's business judgment, the party is not likely to submit a Qualified Bid or who seeks information from the Debtor for some purpose other than legitimate due diligence.

*Credit Bidding*.  Creekstone will be the stalking horse bidder (with no break-up fee) and, pursuant to the Settlement Agreement, shall be entitled to credit bid White Winston's estimated claim, SCS's secured claim and Creekstone's DIP loan claim to the extent such DIP loan claim is secured.  Creekstone's credit bid shall be deemed to be $13 million plus administrative expenses (including professional fees and cure amounts for executory contracts and leases).

*Auction Process*.  At the Auction, after any initial overbid, bidding shall be conducted in $100,000 increments.  Bidding at the Auction will continue until such time as the highest and best offer is determined by the Debtor subject to Court approval.  The Debtor may adopt rules for the bidding process that, in its reasonable judgment, will better promote the goals of the bidding process and that are consistent with the provisions of the Order granting this Motion (the "Bidding Procedures Order").

*Deposits*.  As described above in "Provisions Governing Qualified Bids," prospective bidders, other than the Stalking Horse Bidder, must give the Debtor a deposit of $825,000.  The deposit(s) of the winning bidder and any Back-up Bidders (as defined below) shall be held by Debtor's counsel in its client trust account.  Because the funds will be held in an IOLTA trust account, interest earned on the deposit is not available to the account holder or the depositor.  If the winning bidder fails to close on the relevant assets for any reason other than the Debtor's failure to obtain Court approval of the sale, its deposit will not be refunded.  If the sale is consummated with the winning bidder, then the winning bidder's deposit will be credited towards the winning bid and Back-up Bidders' deposits will be returned.  If the closing fails because the Debtor fails to obtain Court approval of the sale, then all deposits shall be refunded.

*Back-Up Bidder*.  Qualified Bid(s) submitted by the Bid Deadline shall remain open and irrevocable through the close of the Auction and thereafter until the earlier of (a) the closing of the sale to another Bidder, or (b) an unexcused failure to close as defined in the APA (in such capacity, "Back-up Bids", and such bidders "Back-up Bidders").  Upon failure to consummate the Asset sale with the highest or otherwise best Qualified Bidder, the Debtor may close the sale with the next best Back-Up Bidder, successively, until consummation is reached; but, in such event, the Debtor shall retain its rights against any prior Bidder.

*Cancellation of Auction if No Qualified Bids*.  If the Debtor does not receive any Qualified Bids by the Bid Deadline, the Debtor will report to the Court and will proceed with the sale to Creekstone as in the private sale above.

PLEASE TAKE FURTHER NOTICE that the Motion is based on this Notice of Motion, the concurrently filed Memorandum of Points and Authorities and declarations in support of the Motion, the entire record in this case, and other such evidence and argument as the Court may consider.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and supporting documents are available for download through the Court's electronic docketing system for registered users, or by request made to counsel for the Debtor, whose contact information appears at the top of the first page of this pleading.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-1, any response or opposition to the Motion must be made in the form required by Local Bankruptcy Rule 9013-1(f) and must be filed with the Court and served upon counsel for the Debtor and the Office of the United States Trustee no later than 14 days before the hearing date.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve an objection may be deemed by the Court to be consent to the relief requested.

PLEASE TAKE FURTHER NOTICE that the hearing on the Motion will be conducted via video and audio conference using ZoomGov.  Instructions for participating in the hearing via ZoomGov are attached.

DATED: April 25, 2022                     LESNICK PRINCE & PAPPAS LLP


                                          By:  ___/s/ Christopher E. Prince_____
                                          Christopher E. Prince
                                          Counsel for Debtor and Debtor in Possession
                                          Figueroa Mountain Brewing, LLC

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| CHRISTOPHER E. PRINCE (SBN 183553)<br>cprince@lesnickprince.com<br>MATTHEW A. LESNICK (SBN 177594)<br>matt@lesnickprince.com<br>LESNICK PRINCE & PAPPAS LLP<br>315 W. Ninth Street, Suite 705<br>Los Angeles, CA  90015<br>Telephone:    (213) 493-6496<br>Facsimile:    (213) 493-6596<br><br>☒ *Attorney for Debtor*<br>☐ *Movant appearing without an attorney* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

</div>

| In re:<br><br>FIGUEROA MOUNTAIN BREWING, LLC<br><br><div align="center">Debtor(s)</div> | CASE NO.: 9:20-bk-11208-MB<br>CHAPTER:  11 |
|---|---|
| | **SUPPLEMENTAL NOTICE OF HEARING TO BE HELD REMOTELY USING ZOOMGOV AUDIO AND VIDEO** |
| | HEARING DATE:    May 16, 2022<br>HEARING TIME:    10:00 a.m. |

**Movant:**  Debtor Figueroa Mountain Brewing, LLC

1. The Movant has filed the following written notice or other pleading ("Notice") advising of a hearing to be held in the above-captioned case, on the date and time indicated above, before the Honorable Martin R. Barash, United States Bankruptcy Judge *(insert name of pleading and, if available, docket number)*:

> Notice of Motion and Motion of Debtor for Entry of an Order (1) Approving Form of Asset Purchase Agreement; and (2) Authorizing a "Private Sale" or, in the Alternative, (3) Approving Auction Sale Format and Bidding Procedures and Related Relief

2. Notwithstanding any language in the Notice advising or suggesting that the hearing will be held physically in one of the Court's courtrooms, **please be advised that due to the COVID-19 pandemic, the Court will conduct the hearing remotely, using ZoomGov audio and video technology.**  Individuals will not be permitted access to the courtroom.  Information on how to participate in the hearing remotely using ZoomGov is provided on the following page of this notice.

3. Hearing participants and members of the public may participate in and/or observe the hearing using ZoomGov, free of charge.

4. Individuals may connect by ZoomGov audio and video using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet).  The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet.  Individuals connecting in this manner will be prompted for the Meeting ID and Password shown below.

5. Individuals also may connect to the hearing by telephone only, using the telephone number provided below.  Individuals connecting in this manner also will be prompted for the Meeting ID and Password.

6. Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the hearing, and no pre-registration is required.

7. The audio portion of the hearing will be recorded electronically by the Court and constitute its official record.

8. All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.

9. The following is the unique ZoomGov connection information for the above-referenced hearing:

|  |  |
|---|---|
| Meeting URL: | https://cacb.zoomgov.com/j/1606572563 |
| Meeting ID: | 160 657 2563 |
| Password: | 026927 |
| Telephone: | 1 (669) 254-5252 or 1 (646) 828-7666 |

10. More information on using ZoomGov to participate in this hearing is available on the Court's website at the following web address:  https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-participants.

Date: April 25, 2022

Lesnick Prince & Pappas LLP
_____
Printed name of law firm (if applicable)


/s/Christopher E. Prince
_____
Printed name of individual Movant or attorney for Movant

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made as of the ___ day of April, 2022, by and between Figueroa Mountain Brewing, LLC ("Debtor"), as seller ("Seller"), and Creekstone Mountain LLC ("Creekstone"), or its designee, as buyer ("Buyer").

## RECITALS

A.      The Debtor is primarily in the business of brewing, distributing and selling beer at wholesale to distributors and operating tap-rooms for the sale and service of beer to retail customers (the "Business").

B.      On October 5, 2020 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court" or "Court"), commencing Case No. 9:20-bk-11208-MB (the "Bankruptcy Case"). Since the Petition Date, Debtor has been managing its affairs as debtor in possession. No trustee or examiner has been appointed. On January 5, 2021, the United States Trustee appointed an official committee of unsecured creditors.

C.      SCS Acquisitions LLC ("SCS"), successor in interest to Montecito Bank & Trust ("MBT"), asserts a claim against the Debtor as of the Petition Date in the amount of $4,257,285.70 plus additional amounts incurred after the Petition Date (the "Bank Claim") secured by substantially all of the Debtor's assets (the "Bank Lien").  As of the date of the Agreement, the Bank Claim is in the approximate amount of $_____ and continues to accrue default interest at the rate of ___% per annum.

D.      White Winston Select Asset Funds LLC ("WW") asserts a claim against the Debtor as of the Petition Date in the amount of $9,490,718.30 plus additional amounts incurred after the Petition Date (the "WW Claim") secured by substantially all of the Debtor's assets (the "WW Lien").

E.      Pursuant to a Priority Agreement dated October 18, 2019, between MBT and WW, MBT agreed to subordinate the Bank Lien to the WW lien to the extent set forth in the Priority Agreement.  WW and SCS have disputed the nature, extent and enforceability of the Priority Agreement.  Pursuant to Orders of the Bankruptcy Court, the Debtor has been authorized to use the cash collateral of SCS and WW to operate its business and grant SCS and WW replacement liens on the Debtor's postpetition inventory, cash and accounts receivable (the "Floating Collateral"), as adequate protection, but only to the same validity, priority and extent as the prepetition liens on the Floating Collateral (the "Adequate Protection Liens").

F.      By Order entered October 8, 2020 [Docket No. 46], Creekstone has a first-priority lien on the first $46,616.02 received from the revenue collected by the Seller's taproom operations, securing its postpetition loan for purposes of paying Seller's non-insider payroll obligations (the "Creekstone Payroll Loan").

G.      On December 23, 2020, the Debtor filed a motion to approve a $1,000,000 post-petition loan from Creekstone to the Debtor (the "DIP Loan").  On January 21, 2021, the

Bankruptcy Court entered its final order authorizing the DIP Loan. The DIP Loan is secured by a lien on all the Debtor's assets (the "Creekstone Lien").  With respect to postpetition Floating Collateral, the Creekstone Lien is senior to all other liens except the Adequate Protection Liens. As of the date of the Agreement, the DIP Loan is in the approximate amount of $_____$ and continues to accrue interest at the rate of 5% per annum.

      H.      Buyer has spent considerable time, over a period of several months, conducting on-site due diligence of the Debtor's business and is fully familiar with the Debtor's business operations and the Assets and is ready, willing and able to proceed with a proposed acquisition of the Assets on the terms and conditions set forth below (the "Transaction").

      I.      Seller and Buyer are entering into this Agreement to implement the Transaction, subject to, among other things, approval of this Agreement by the Bankruptcy Court.

      J.      On or about March 14, 2022, subject to approval by the Bankruptcy Court, the Debtor, WW, SCS, Buyer and other parties entered into a settlement agreement resolving all disputes between and among the parties (the "WW Settlement Agreement").

      **NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows.

## ARTICLE I.

## DEFINITIONS

1.01    "Adequate Protection Liens" shall have the meaning set forth in Recital E.

1.02    "Agreement" shall mean this Agreement.

1.03    "Assets" shall have the meaning set forth in Section 2.01.

1.04    "Assigned Contracts" shall have the meaning set forth in Section 2.02.

1.05    "Bank Claim" shall have the meaning set forth in Recital C.

1.06    "Bank Lien" shall have the meaning set forth in Recital C.

1.07    "Bankruptcy Case" shall mean the Debtor's bankruptcy case pending in the Court as Case No. 9:20-bk-11208-MB.

1.08    "Buyer" shall mean Creekstone Mountain LLC or its designee.

1.09    "Closing" shall have the meaning set forth in Section 8.01(a)8.01.

1.10    "Closing Outside Date" shall have the meaning set forth in Section 8.01(a)8.01.

1.11    "Closing Target Date" shall have the meaning set forth in Section 8.01(a)8.01.

1.12    "Court" shall mean the United States Bankruptcy Court for the Central District of California.

1.13    "Creekstone" shall mean Creekstone Mountain LLC.

1.14    "Creekstone Lien" shall have the meaning set forth in Recital G.

1.15    "Creekstone Payroll Loan" shall have the meaning set forth in Recital F.

1.16    "Debtor" shall mean Figueroa Mountain Brewing, LLC.

1.17    "DIP Loan" shall have the meaning set forth in Recital F.

1.18    "ERTCs" shall mean Employee Retention Tax Credits provided for under the Internal Revenue Code.

1.19    "Excluded Assets" shall have the meaning set forth in Section 2.03.

1.20    "Floating Collateral" shall have the meaning set forth in Recital E.

1.21    "Free and Clear" shall have the meaning set forth in Section 2.01.

1.22    "Herc Claim" shall mean all claims against any and all persons and entities arising from or related to the claim against Herc Rentals identified by FMB in response to question 74 of Schedule A/B in its schedules filed with the Court and appearing at docket number 142 (page 26 of 205).

1.23    "Non-Professional Administrative Expenses" shall mean all postpetition liabilities of the Debtor excluding amounts owed to Professionals.

1.24    "Petition Date" shall mean October 5, 2020.

1.25    "Post-Closing Collections" shall mean all cash collected by Seller after the Closing except cash that is a proceed of an Excluded Asset.  Without limitation, Post-Closing Collections include all payments, refunds and credits received by Seller from trade vendors, utility companies, and state or federal taxing authorities, including ERTCs.

1.26    "Professionals" mean all persons employed by the Debtor's bankruptcy estate or a committee appointed under section 1102 of the Bankruptcy Code pursuant to an Order of the Bankruptcy Court, including persons employed pursuant to sections 327, 363(b) or 1103 of the Bankruptcy Code.

1.27    "Professional Administrative Expenses" shall mean all postpetition liabilities of the Debtor owed to Professionals that Seller is authorized and obligated to pay pursuant to an Order of the Bankruptcy Court.

1.28    "Purchase Price" shall have the meaning set forth in Section 3.01.

1.29    "SCS" shall have the meaning set forth in Recital C.

1.30    "Seller" shall mean Figueroa Mountain Brewing, LLC.

1.31    "Transaction" shall have the meaning set forth in Recital H.

1.32    "WW" shall have the meaning set forth in Recital D.

1.33    "WW Claim" shall have the meaning set forth in Recital D.

1.34    "WW Lien" shall have the meaning set forth in Recital D.

1.35    "WW Settlement Agreement" shall have the meaning set forth in Recital J

## ARTICLE II.

## ASSET DESCRIPTION

2.01    **Sale and Purchase of Assets**.  Subject to Sections 2.03 and 3.01(a), Seller agrees that at the Closing it shall sell, assign, transfer and convey to Buyer free and clear of all liens, claims, encumbrances and other interests except that Buyer may elect to assume the Bank Claim with SCS consent ("Free and Clear"), and Buyer agrees that it shall purchase, take assignment of, and acquire from Seller, all of Debtor's right, title and interest in all of the Debtor's assets, properties, and business, including all sale and distribution rights, equipment, inventory, receivables, products, royalties, licenses, license agreement, and all other assets of Debtor, tangible and intangible, of every kind and nature (collectively, the "Assets"), including, without limitation, the following:

(a)    all Assigned Contracts including any security deposits or other deposits delivered in connection therewith;

(b)    all inventory, including raw materials, works in process, and finished goods, wherever located and whether or not obsolete or carried on Seller's books of account, in each case;

(c)    all of Seller's fixed assets and other personal property and interests related to the Seller's business, wherever located, including all tools, parts and supplies, machinery, equipment, furniture, furnishing, appliances, fixtures, office equipment and supplies, inventory, trade fixtures and leasehold improvements, in each case, with any freely transferable warranty and service rights of Seller related thereto;

(d)    all books, records, logs, papers, files, location files, correspondence, reports, account information, records and other business files and records; and

(e)    all accounts receivable, notes receivable and negotiable instruments of Seller;

(f)    all of Seller's copyrights, trademarks, design marks, service marks, tradenames and other intellectual property rights throughout the world and all renewals and extensions thereof;

(g)    all goodwill and know-how;

(h)    all contracts and general intangibles, subject to Section 5.01;

(i)    all licenses listed on Schedule __, including all license(s) issued by the California Department of Alcoholic Beverage Control;

(j)    all Post-Closing Collections, subject to Section 8.01(c);

(k)    all other intangibles and intellectual property of any kind used or useful in the operation of the Debtor's business

(l)    all cash and cash equivalents.

2.02    **Assumption and Assignment of Executory Contracts**.  Buyer shall assume from Seller and Seller shall assign to Buyer pursuant to section 365 of the Bankruptcy Code the prepetition executory contracts and unexpired leases, including all rights, obligations and liabilities therein, and assign all the postpetition contracts and unexpired leases, listed on Schedule 2.02 (collectively, the "Assigned Contracts").  Provided, however, Buyer acknowledges that the time for Seller to assume and assign unexpired real property leases under Section 365(d)(4) can only be extended with the prior written consent of the non-debtor parties to such leases.  Accordingly, Seller is not obligated to assume and assign such leases if it cannot obtain consent for additional extensions of time to do so and, therefore, such leases are not Assigned Contracts.  For the avoidance of doubt, Seller shall not seek to reject any such leases unless requested by Buyer or because of a failure to obtain consent from the applicable landlord.  Schedule 2.02 includes all known cure amounts required to be paid pursuant to section 365 of the Bankruptcy Code as a condition to assumption and assignment, and Buyer agrees to pay or otherwise consensually resolve the cure amounts specifically listed on Schedule 2.02  or otherwise determined by the Court.  The Assigned Contracts to be listed on Schedule 2.02 will be supplied within 10 days after entry of either Sale Order.  Notwithstanding the foregoing, Buyer shall have the right, in its sole and absolute discretion, to add Additional Contracts to Schedule 2.02 at any time prior to Closing or to remove any Assigned Contract from Schedule 2.02 at any time prior to Closing or such later time that the Court determines the cure amount of a particular Assigned Contract.  If an executory contract that is an Asset is not identified until after the Closing, the contract shall be deemed sold, assigned, transferred, and conveyed to Buyer as of the Closing (and shall be deemed an Assigned Contract), provided that Buyer acknowledges that it may not have the benefits of assumption and assignment under section 365 and its rights under the contract may be subject to all rights of the non-debtor party to the contract under all applicable law.

2.03    **Excluded Assets**.  Notwithstanding anything to the contrary in this Agreement, the Assets shall not include the following excluded assets (the "Excluded Assets"): (i) $300,000 of cash on hand, (ii) causes of action arising under the Bankruptcy Code,  (iii) causes

of action against the Debtor's directors, officers, accountants, members, managers, employees, agents and affiliates, and (iv) the Herc Claim.

## ARTICLE III.

## PURCHASE PRICE

3.01 **Amount and Payment of Purchase Price**. In consideration for the transfer of the Assets, Buyer hereby agrees to pay to Seller at the Closing the following consideration (the "Purchase Price"), subject to the terms and conditions of this Agreement:

(a) Either (i) payment of the Bank Claim, or (ii) assumption of the Bank Claim with the consent of SCS and a release by SCS of all claims held by SCS against Seller's estate, estimated to be approximately $_____;

(b) Satisfaction in full of the cure amounts required to be paid to authorize assignment of the Assigned Contracts, estimated to be approximately $_____;

(c) Consideration to WW on account of the WW Claim upon the terms set forth in the WW Settlement Agreement.

(d) Satisfaction in full of the DIP Loan and the Creekstone Payroll Loan, estimated to be approximately $_____, provided that the DIP Loan and Creekstone Lien shall remain outstanding to the extent necessary to effectuate the "Chapter 11 Carveout" as defined in the DIP Loan from the $300,000 cash on hand retained by Seller at Closing; and

(e) Payment or assumption of all Non-Professional Administrative Expenses, estimated to be approximately $_____.

(f) Guarantee of Professional Administrative Expenses unsatisfied as of eight months after the Closing, not to exceed $330,000, subject to Section 8.01(c).

## ARTICLE IV.

4.01 **Satisfaction of DIP Loan and Creekstone Payroll Loan in Lieu of Deposit**. If CS is the buyer under the entered Sale Orders (as defined in the Settlement Agreement) and fails to close, WW Settlement Agreement Section Four: CS Fails to Close shall govern, including without limitation, paragraph 19 regarding waiver of the right to repayment of the CS DIP Loan.

4.02 **Possible Higher or Better Offers**. Buyer acknowledges and is aware that (i) the Transaction and Agreement are subject to hearing and approval by the Bankruptcy Court and shall be noticed to creditors and parties in interest in the Bankruptcy Case, and (ii) the Transaction may be subject to any higher or better offers at the hearing held to approve the Transaction, as well as any objections by creditors and parties in interest, provided that any

procedures for higher and better offers shall not vary from the procedures set forth in the WW Settlement Agreement. In the event a higher or better offer is accepted and approved by the Bankruptcy Court, this Agreement will automatically terminate without any required notice from either Party (unless this Agreement is selected as a backup bid, in which event the Agreement will automatically terminate upon closing to a buyer other than Buyer). In the event the Bankruptcy Court refuses to approve the Agreement for any other reason, this Agreement will automatically terminate without any required notice from either Party.

4.03    **Controlling Effect of WW Settlement Agreement**. In the event of any conflict or inconsistency between this Agreement and the WW Settlement Agreement, the WW Settlement Agreement shall control.

## ARTICLE V.

5.01    **Assumption of Liabilities other than the Assigned Contracts**.

(a)    Obligations Not Assumed. Notwithstanding anything to the contrary contained herein, Buyer shall not assume and shall not be liable for any obligations or liabilities of the Debtor except only to the extent that such liability or obligation is expressly assumed by Buyer. Without affecting the generality of the foregoing, Buyer shall not be liable for:

(i)    Costs, expenses, obligations or liabilities which relate to an Agreement that is not an Assigned Contract;

(ii)    Costs, expenses, obligations or liabilities related to or arising out of any pre-Closing employment relationships of Seller;

(iii)    Obligations in respect of any litigation, judgments, claims, demands or proceedings primarily related to Seller, its employees, agents, affiliates, directors, officers, members and managers or any of the activities of Seller that arose pre-Closing.

## ARTICLE VI.

## REPRESENTATIONS AND WARRANTIES

6.01    **Seller's Representations and Warranties.** Seller represents, warrants and covenants to Buyer that:

(a)    Power and Authority. Seller has the full power and authority to execute, deliver and perform its obligations under this Agreement, subject to approval of the Bankruptcy Court as described herein. Upon entry by the Bankruptcy Court of an order authorizing and approving this Agreement and the Transaction, this Agreement and all agreements, instruments, and documents herein provided to be executed by Seller are

and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Seller.

      (b)    <u>No Transfer of Assets</u>.  Seller has not disposed of or transferred any of the Assets since the Petition Date, other than sales of inventory and goods in the ordinary course of the Seller's business or as otherwise specifically authorized by order of the Bankruptcy Court.

      (c)    <u>No Litigation</u>.  To the best of Seller's knowledge, there are no actions, suits or proceedings pending or threatened in any court or before any administrative agency that would prevent Seller from completing the Transaction other than those that are resolved by the WW Settlement Agreement.

      (d)    <u>No Other Warranties by Seller</u>.  Seller shall convey the Assets on an "AS IS, WHERE IS" basis, with no representations or warranties or recourse of any kind, express or implied, either oral or written, with respect to the Assets, including their value, condition or fitness for any use.  Upon the Closing, Buyer shall assume all responsibility, liability and obligation for the physical condition and status of the Assets.  Seller has made and hereby makes no warranty or representation whatsoever regarding the fitness for a particular purpose, quality or merchantability of the Assets.

    6.02  **Buyer's Representations and Warranties.**  Buyer represents, warrants and covenants to Seller that:

      (a)    <u>Company Organization</u>.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation.

      (b)    <u>Power and Authority</u>.  Buyer has the full power and authority to execute, deliver and perform Buyer's obligations under this Agreement.  This Agreement and all agreements, instruments, and documents herein provided to be executed by Buyer are and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Buyer when executed and delivered.

      (c)    <u>No Litigation</u>.  To the best of Buyer's knowledge, there are no actions, suits or proceedings pending or threatened in any court or before any administrative agency which would prevent Buyer from completing the Transaction.

      (d)    <u>Buyer's Inspection</u>.  Buyer has inspected the Assets, acknowledges the quantity and condition of the Assets, and acknowledges that no further inspection or due diligence is a condition to complete the Transaction.  Buyer acknowledges that it is purchasing the Assets on an "AS IS, WHERE IS" basis, with no representations or warranties or recourse of any kind except as specifically set forth in Section 6.01(a)–(d) above.

## ARTICLE VII.

## CONDITIONS PRECEDENT TO CLOSING

7.01    **Buyer's Conditions.**  Buyer's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any one or more of which may only be waived in writing by Buyer):

(a)    Court Approval.  The Court shall have entered an order in form and substance acceptable to Buyer (i) granting Seller's motion for an order authorizing and approving of the Transaction and the Agreement, (ii) authorizing Seller to transfer the Assets to Buyer Free and Clear, and (iii) authorizing Seller to assume and assign the Assigned Contracts, and such order shall not be stayed pending any appeal.

(b)    Assets. Seller shall not have sold or otherwise disposed of any asset which constitutes a material portion of the Assets other than the sale of goods in the ordinary course of business.

(c)    Performance of Obligations.  All terms, covenants, agreements and conditions set forth in this Agreement to be complied with and performed by Seller on or prior to the Closing shall have been fully complied with and performed in all material respects, and all representations and warranties of Seller shall be true on the Closing in all material respects as if made on and as of such date.

(d)    Delivery of Documents.  Seller shall have executed and delivered to Buyer all documents, and Seller shall have taken all actions, requested by Buyer that are reasonably necessary to effectuate the Transaction.

(e)    Transfer of Licenses.  All approvals by governmental agencies required for Buyer to operate Seller's business, including license(s) issued by the California Department of Alcoholic Beverage Control (whether by transfer from Seller or otherwise), shall have been obtained.  For the avoidance of doubt, Paragraph 7 of the WW Settlement Agreement governs Buyer's obligations to obtain the necessary license(s) from the California Department of Alcoholic Beverage Control.

7.02    **Seller's Conditions.**  Seller's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any one or more of which may be waived in writing by Seller, other than sub-section (a) below):

(a)    Court Approval.  The Court shall have entered an order in form and substance acceptable to Seller (i) granting Seller's motion for an order authorizing and approving of the Transaction and the Agreement, (ii) authorizing Seller to transfer the Assets to Buyer Free and Clear, (iii) authorizing Seller to assume and assign the Assigned Contracts, and (iv) and such order shall not be stayed pending any appeal.

(b)    Performance of Obligations.  All terms, covenants, agreements and conditions set forth in this Agreement to be complied with and performed by Buyer on or prior to the Closing shall have been fully complied with and performed in all

9

material respects, and all representations and warranties of Buyer shall be true on the Closing in all material respects as if made on and as of such date.

(c)     Delivery of Documents.  Buyer shall have executed and delivered to Seller all documents requested by Seller in its reasonable discretion to effectuate the Transaction.

# ARTICLE VIII.

## CLOSING

8.01    **Closing.**

(a)     Events Constituting Closing. Paragraph 7 of the WW Settlement Agreement governs the time for Buyer to close (the "Closing").  Upon the Closing, (i) Buyer shall deliver the Purchase Price to Seller, and all documents reasonably requested by Seller, and (ii) Seller shall deliver to Buyer possession of the Assets, and all documents reasonably requested by Buyer.

(b)     Transition Agreement Pending Transfer Of Licenses.  If the Closing does not occur in accordance with Paragraph 7 of the WW Settlement Agreement because the closing condition set forth in Section 7.01(e) is the only closing condition that has not been satisfied, then Buyer agrees, to the extent necessary to sustain the Debtor's operations, to fund the Debtor's operations on substantially the same terms as the DIP Loan through the period provided in Paragraph 7 of the WW Settlement Agreement.

(c)     Post-Closing Collections.  Seller shall undertake all acts reasonably requested by Buyer to maximize the Post-Closing Collections.  Seller shall retain the first $550,000 of Post-Closing Collections, which retention of the first $330,000 collected shall reduce dollar for dollar Buyer's guarantee of Professional Administrative Expenses as set forth in Section 3.01(f).  Seller and Buyer shall share all remaining Post-Closing Collections 50/50 until all Professional Administrative Expenses are satisfied in full, after which all Post-Closing Collections shall be paid to Buyer.  Seller acknowledges that certain Post-Closing Collections may be materially maximized if received before the Bankruptcy Case is closed or dismissed, and Seller shall not request that the Bankruptcy Court close or dismiss the case prior to receipt of all outstanding Post-Closing Collections unless otherwise ordered by the Bankruptcy Court or consented to by Buyer.

# ARTICLE IX.

## COVENANTS PENDING CLOSING

9.01    **Seller Covenants.**  Seller covenants that, pending the Closing, without Buyer's prior written consent:

10

(a)    <u>Contracts</u>. Seller shall not modify any contracts or agreements, including any franchise, licensing or other agreements ("Agreements") related to or affecting the Assets or enter into any Agreements relating to or affecting the Assets other than in the ordinary course of business;

(b)    <u>Preserving Assets</u>.  Seller shall use its best efforts to preserve the Assets and any existing Agreements;

(c)    <u>Sale of Assets</u>. Seller shall not sell or otherwise dispose of any asset which constitutes a portion of the Assets other than in the ordinary course of business; and

(d)    <u>Non-Professional Administrative Expenses</u>.  Seller shall diligently attempt to negotiate discounts and/or payment plans concerning Non-Professional Administrative Expenses to the extent reasonably requested by Buyer.

(e)    <u>Insurance</u>.  Seller shall cause Buyer to be named as an additional insured and loss payee on all insurance policies concerning the Assets.

(f)    <u>Representations True</u>. Seller shall promptly advise Buyer in writing of any condition or circumstance occurring from the date hereof up to and including the Closing which would cause the representations and warranties of Seller to become untrue in any material respect.

9.02    **Buyer Covenants.**  Buyer covenants that, pending the Closing:

(a)    <u>Licenses</u>.  Buyer shall use its best efforts to obtain all necessary licenses and permits required to satisfy the closing condition set forth in Section 7.01(e) as soon as practicable.

## ARTICLE X.

## <u>COVENANTS OF ACCESS AND INFORMATION</u>

10.01    **Access.**  Seller shall give Buyer access at normal business hours to the Assets and to the Debtor's books, contracts, commitments and other records with respect thereto that are in Seller's possession, and shall furnish Buyer during such period with such information in Seller's possession concerning the Assets as Buyer may reasonably request.

10.02    **Permits and Approvals.**  Each party covenants and agrees to promptly furnish the other with all information and data in the furnishing party's possession requested in writing by the requesting party which is reasonable and necessary in order to assist the requesting party to secure the permits, licenses, approvals, financing and/or consents required to complete the Transaction, if any.

10.03    **Litigation: Claims.**  Each party covenants and agrees to promptly notify the other of any claim, action, suit, proceeding or investigation that is commenced or threatened

11

that relates to or affects the Assets and becomes known to any of them between the date of this Agreement and the Closing.

## ARTICLE XI.

## RISK OF LOSS

11.01   Risk of loss to the Assets shall not pass to Buyer until the Closing. In the event of the material change, destruction or damage of any Assets prior to Closing, Seller shall promptly notify Buyer in writing.  Buyer shall have ten (10) days from receipt of such notice to notify Seller of its election to terminate this Agreement and then Section Four: CS Fails to Close shall apply.  In the alternative, Buyer may elect to proceed with Closing and accept insurance proceeds payable to Seller to cover the loss.

## ARTICLE XII.

## NOTICES

12.01   All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of delivery, if delivered personally or by email (with receipt confirmed and acknowledged in writing), to the party to whom notice is to be given, on the date of delivery if delivered by reputable courier with tracking ability, or on the fifth business day after mailing if mailed by first class mail, registered or certified, postage prepaid and properly addressed as follows:

If to Buyer:

Creekstone Mountain LLC
Attn: Jimmy Chehebar
511 Canal Street, 6th Fl.
New York, NY 10013
Telephone: (212) 924-3100
Email: Jimmy@veracitypartners.net

    with a copy to:

ShemanoLaw
Attn: David B. Shemano
1801 Century Park East, Suite 2500
Los Angeles, CA  90067
Telephone: (310) 492-5033
Email: dshemano@shemanolaw.com

If to Seller:

Figueroa Mountain Brewing, LLC

Attn:   James Wong, CRO
        Jaime Dietenhofer, CEO
45 Industrial Way
Buellton, CA 93427
Email:  jwong@armoryconsulting.com
        jaime@figmtnbrew.com

with a copy to:

Lesnick Prince & Pappas LLP
Attn:   Christopher E. Prince
        Matthew A. Lesnick
315 W. Ninth Street, Suite 705
Los Angeles, CA  90015
Telephone: (213) 493-6496
Email:  cprince@lesnickprince.com
        matt@lesnickprince.com

12.02   **Changes**.  Any party hereto may change its physical or email address for the purpose of receiving notices or demands as herein provided by a written or email notice given in the manner provided above to the other party hereto, which notice of change of physical or email address shall not become effective, however, until the actual receipt thereof by the other parties.

## ARTICLE XIII.

## TERMINATION

13.01   **Termination by Agreement**.  This Agreement may be terminated prior to Closing at any time by the written agreement of Seller and Buyer.

13.02   **Termination by Right Under Agreement**.  In the absence of a breach or default within the scope of Section 13.03, if a condition to Closing for a party does not occur or a party otherwise has the right under the terms of the Agreement to terminate the Agreement, the party may terminate the Agreement by providing written notice to the other party.

13.03   **Termination by Default.**  If either party breaches any covenant or representation or is otherwise in default under the terms of the Agreement, including the failure to perform any obligation that is a condition to the other party's obligation to close the Transaction, the other party may terminate the Agreement by providing written notice to the other party and may assert any rights or remedies resulting from the default.

13.04   Notwithstanding anything in this "Termination" section or any other section of this Agreement, if CS is the buyer under either of the entered Sale Orders (as defined in the Settlement Agreement)  and CS fails to close for any reason, the provisions of WW Settlement Agreement Section Four: CS Fails to Close shall govern.

# ARTICLE XIV.

## MISCELLANEOUS

14.01  **Further Assurances.**  Each party shall, at the request of the other, at any time and from time to time following the Closing hereunder, execute and deliver to the requesting party all such further instruments or documents, and shall take such other action, as may be reasonably necessary or appropriate to more effectively assign, transfer and convey to Buyer the Assets, or to perfect or record Buyer's title to or interest in the Assets, or otherwise carry out the provisions of this Agreement.

14.02  **Governing Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the California, without reference to conflict of law principles, and except as superseded by applicable federal laws.  This Agreement shall be construed in a neutral manner and any ambiguities shall not be construed against the party responsible for drafting this Agreement.

14.03  **Bankruptcy Court Jurisdiction.**  The resolution of any and all disputes between the parties herein concerning the Transaction, the Assets or the interpretation or enforcement of this Agreement shall be resolved upon motion by any party to the Bankruptcy Court.

14.04  **Binding Effect.**  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, personal representatives, and permitted assigns.  This Agreement is solely for the benefit of the parties hereto and no provision of this Agreement shall be deemed to confer upon third parties any rights, remedies, claims or causes of action.

14.05  **Arm's Length Transaction.**  This Agreement was negotiated at arm's length and in good faith, and the Transaction, and the relationship between Seller and Buyer, and their respective agents, is wholly arm's length.

14.06  **Captions**.  The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference to this Agreement and in no way whatsoever define, limit or describe the scope or intent of this Agreement, and do not in any way affect this Agreement.

14.07  **Fees and Expenses.**  The parties hereto shall each bear their own expenses, including but not limited to legal fees, incident to the negotiation and preparation of this Agreement and the consummation of the transactions contemplated hereby.  The prevailing party in any and all disputes between the parties herein concerning the Transaction, the Assets or the interpretation or enforcement of this Agreement shall be entitled, in addition to all other relief awarded, to an award of the attorneys' fees and costs incurred, including in connection with any appeal, whether before or after judgment.

14.08  **Entire Agreement.**  This Agreement, together with the WW Settlement Agreement, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, representations, and understandings of the

parties. No additions to or modification of this Agreement shall be binding unless executed in writing by all the parties. Except as may be otherwise provided in this Agreement, no waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, no waiver shall constitute a continuing waiver, and no waiver shall be binding unless evidenced by an instrument in writing executed by the party making the waiver.

     14.09  **Execution in Counterparts.**  This Agreement may be executed by the parties in multiple counterparts, which taken together shall be deemed one original document.

     **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year first above written.


FIGUEROA MOUNTAIN BREWING,          CREEKSTONE MOUNTAIN LLC
LLC


                                   By_____
By: _____          Name:
Name:          Title:
Title:

15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF DEBTOR FOR ENTRY OF AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT; AND (2) AUTHORIZING A "PRIVATE SALE" OR, IN THE ALTERNATIVE, (3) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES AND RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/25/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert D Bass**    bob.bass47@icloud.com
- **William C Beall**    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **Daren Brinkman**    office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- **Joseph P Buchman**    jbuchman@bwslaw.com, svasquez@bwslaw.com
- **Debra E Cardarelli**    dcardarelli@lesnickprince.com, jmack@lesnickprince.com
- **Jamie P Dreher**    jdreher@downeybrand.com, mfrazier@downeybrand.com;courtfilings@downeybrand.com
- **Brian David Fittipaldi**    brian.fittipaldi@usdoj.gov
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Karen L Grant**    kgrant@silcom.com
- **Brian S Healy**    brian@tw2law.com
- **Eve H. Karasik**    ehk@lnbyb.com
- **Paul J Laurin**    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com;jose.barajas@btlaw.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Gordon G May**    hpc@ggb-law.com
- **Randall P Mroczynski**    randym@cookseylaw.com
- **Lisa J Nilmeier**    lnilmeier@milano-ri.com, lisanilmeier@gmail.com
- **Juliet Y. Oh**    jyo@lnbyg.com, jyo@lnbyb.com
- **Brian A Paino**    bpaino@mcglinchey.com, irvineECF@mcglinchey.com
- **Laura J Portillo**    Attorneys@portilloronk.com
- **Christopher E Prince**    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **Jonathan C Sandler**    jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Summer M Shaw**    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **David B Shemano**    dshemano@shemanolaw.com
- **Felicita A Torres**    torres@g-tlaw.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov
- **Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com
- **Christian J Younger**    christian@youngerlawsb.com, youngercr88474@notify.bestcase.com
- **Ryan D Zick**    rzick@ppplaw.com, shernandez@ppplaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 04/25/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- **Jeffrey D. Sternklar**    jeffrey@sternklarlaw.com
- **James D. Wong**    jwong@armoryconsulting.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/25/2022 | Christopher E. Prince | /s/Christopher E. Prince |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**